THE FLORSHEIM SHOE COMPANY, Plaintiff-Appellant, *v.* ILLINOIS FAIR EMPLOYMENT PRACTICES COMMISSION *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 80-814

Opinion filed August 25, 1981.

Sheldon Schwartz, of Des Plaines, and James K. Pendleton, of St. Louis, Missouri, for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff Florsheim Shoe Company filed suit in the circuit court seeking review of administrative proceedings before defendant Fair Employment Practices Commission (Commission). The circuit court affirmed the Commission's decision that plaintiff committed an unfair labor practice in violation of the Fair Employment Practices Act (FEPA) (Ill. Rev. Stat. 1973, ch. 48, par. 851 *et seq.*)[1] when plaintiff laid off defendant Jean Woods. On appeal plaintiff asks this court to consider (1) whether the Commission's complaint satisfied the requirements of due process, (2) whether the Commission applied the proper legal standard to the proofs, and (3) whether the Commission's decision is contrary to the manifest weight of the evidence.

On November 13, 1974, Woods filed a charge with the Commission which alleged plaintiff laid off Woods as a result of sex discrimination. The charge stated Woods was three months pregnant. On June 2, 1975, the Commission issued a complaint which alleged that plaintiff laid off Woods and four other full-time workers on November 8, 1974, and that plaintiff selected Woods for the layoff because Woods was pregnant. The Commission subsequently held an adjudicatory hearing before an administrative law judge (ALJ) and the following facts were adduced.

During the fall of 1974, plaintiff instructed its supervisory personnel to select workers for layoff due to economic reasons. Frank Keats, Woods' office manager and supervisor, was responsible for selecting layoff candidates in Woods' department. Five full-time and three part-time department personnel had to be laid off. Keats was aware that Woods

---

[1] The FEPA was repealed by Public Act 81-1216, §10—108, effective July 1, 1980. Ill. Laws 1979, §10—108, at 4892-93.

thought herself to be pregnant. On November 8, 1974, Woods and two other full-time employees, Debra Rentas and Linda Matos, were called into Keats' office. Keats informed the women they were selected for layoff. Woods and Rentas were told they were selected because they were pregnant. Keats justified the layoff to them on the ground that he thought they would be leaving anyway and it would be unfair to lay off others who did not intend to leave. Woods told Keats she did not intend to take a maternity leave until just before her expected date of delivery, sometime during the spring of 1975. The only other pregnant woman in the department was also laid off. At least one other employee with less time on the job than any of the laid-off pregnant women was retained in Woods' department.

The record also indicates that during Woods' employment with plaintiff, management personnel discussed with her their concerns about her poor work performance and attitude. Subsequent to those discussions, but prior to the instant layoff, Woods was told her work performance and attitude had improved. She was given a raise in salary.

Woods testified she suffered a miscarriage in February of 1975. Plaintiff proffered testimony that Woods underwent surgery (a dilation and curettage) on February 17, 1975. According to the treating physician, Mahmound Halloway, Woods was not pregnant on the date of that operation. He was treating her for dysfunctional uterine bleeding. Dr. Halloway testified he would be unable to determine whether Woods was pregnant within the seven or eight months previous to the operation.

The ALJ's recommended decision and order found, *inter alia*, that two of the five persons laid off in Woods' department were pregnant, and that Keats selected Woods because he believed Woods was pregnant. The ALJ then held plaintiff committed an unfair employment practice against Woods because pregnancy was the predominant, stated reason for Woods' layoff. In addition, the decision stated that the evidence casting doubt on Woods' pregnancy status in February of 1975 did not refute her declaration of pregnancy in July through November of 1974. Furthermore, the ALJ concluded the relevant issue was whether plaintiff believed Woods to be pregnant and acted upon that belief.

The Commission held the ALJ's recommendation was supported by the facts. The Commission concluded that since the layoff resulted from plaintiff's stated reason (*i.e.*, Woods' pregnancy), the layoff penalized Woods because of her gender in violation of section 3(a) of the FEPA (Ill. Rev. Stat. 1975, ch. 48, par. 853(a)).

Plaintiff appealed that decision to the circuit court which affirmed the Commission's determination, but remanded the cause for an additional hearing on appropriate relief regarding back pay. Plaintiff's initial appeal to this court was dismissed for want of a final order. The circuit

court subsequently affirmed the Commission's second back pay determination.

## I

Plaintiff first contends it was denied due process of law because the Commission's complaint against plaintiff provided allegedly inadequate notice. Plaintiff argues it was initially charged with discrimination in selecting Woods for the layoff where that selection was based upon Woods' status as a pregnant woman. Plaintiff states it was prepared to adduce evidence tending to refute Woods' claim of pregnancy. It claims, however, that it was not prepared by the Commission's complaint to defend against the Commission's eventual finding. Plaintiff characterizes the finding as resting only upon the ALJ's conclusion that even if Woods was not pregnant at the time of the layoff, plaintiff's conduct was violative of the FEPA because it was motivated by the *belief* that Woods was pregnant. Since the complaint did not specify "belief" as an element of the alleged unfair labor practice, plaintiff concludes it did not satisfy the notice requirements of due process.

Due process of law requires a definite charge, adequate notice of that charge, and a full, fair and impartial hearing. (*Smith v. Department of Registration & Education* (1952), 412 Ill. 332, 344, 106 N.E.2d 722.) Adequacy of notice is determined by whether the party receiving notice should have anticipated the effects and orders possible under an adverse ruling. *Wilmar Oil, Inc. v. Dixon* (1980), 90 Ill. App. 3d 164, 166, 412 N.E.2d 1139; see also *Department of Revenue v. Jamb Discount* (1973), 13 Ill. App. 3d 430, 435, 301 N.E.2d 23.

Plaintiff claims the instant complaint resulted in prejudice and relies upon *Lake Shore Savings & Loan Association v. American National Bank & Trust Co.* (1968), 91 Ill. App. 2d 143, 147, 234 N.E.2d 418, to support its claim. That case is not apposite. There the complaint was barren of any allegation relative to the underlying theory supporting the circuit court's judgment. The appellate court held that absent such necessary allegation the judgment was void. Here, the original complaint contained sufficient allegations. The instant complaint averred plaintiff laid off Woods because she was pregnant.[2] As the case against plaintiff unfolded, plaintiff

---

[2] Plaintiff apparently assumes on appeal that it conclusively refuted Woods' allegation of pregnancy at the time of the layoff. The record indicates Woods alleged a *prima facie* claim of discrimination which included the allegation of pregnancy. (See part II of this opinion.) Although plaintiff proffered some evidence regarding Woods' physical condition in February of 1975, it did not proffer evidence regarding her allegation of pregnancy during November of 1974. Any evidence which reflected adversely upon the weight of Woods' testimony was ultimately determined to be insignificant on the principal claim. We conclude that determination is not against the manifest weight of the evidence. See part III, of this opinion.

was afforded a reasonable opportunity to know the claims of the opposing parties and to meet them. (See, *e.g., Swift & Co. v. United States* (7th Cir. 1968), 393 F.2d 247, 252; see also *L. G. Balfour Co. v. Federal Trade Com.* (7th Cir. 1971), 442 F.2d 1, 19.) In our opinion plaintiff's argument is without merit. If plaintiff discharged Woods because of pregnancy as charged in the complaint, it appears obvious to us it was because plaintiff *believed* her to be pregnant. Plaintiff has made no showing to support its mere allegation of detrimental reliance upon the instant notice (see *Wilmar Oil, Inc. v. Dixon*), and it offers no example of how it would have conducted its defense differently. The notice and subsequent proceedings afforded plaintiff a reasonable opportunity to know what claim must be defended and what consequences were proposed. (See *Department of Revenue v. Jamb Discount.*) Accordingly, we conclude plaintiff suffered no prejudice and the requirements of due process were satisfied.

## II

Plaintiff also contends the Commission applied an inappropriate legal standard to the proofs. Plaintiff claims that a violation of section 3(a) of the FEPA requires evidence that it treated male employees differently than female employees. In particular, plaintiff contends the evidence must show that males suffering from other temporary disabilities were not laid off where females were laid off. Since evidence regarding treatment of male employees is absent from the record,[3] plaintiff concludes the order must be reversed. We disagree.

Section 3(a) of the FEPA provides that it is an unfair labor practice for any specified employer to discriminate on the basis of sex with respect to conditions or terms of employment. (Ill. Rev. Stat. 1973, ch. 48, par. 853(a).) Although no Illinois case has directly addressed the issue of whether a worker selected for layoff as a result of an employer's belief she is pregnant constitutes prohibited sex discrimination, we believe at least one Federal decision is relevant and helpful in resolving the issue. (See, *e.g., City of Cairo v. Fair Employment Practices Com.* (1974), 21 Ill. App. 3d 358, 363, 315 N.E.2d 344.) The Supreme Court has interpreted a similar statute (title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.* (1970 ed. and Supp. V)) as protecting pregnant women from deprivation of employment opportunities. (*Nashville Gas Co. v. Satty* (1977), 434 U.S. 136, 54 L. Ed. 2d 356, 98 S. Ct. 347.) The employer in *Satty* denied accumulated seniority to female employees returning from pregnancy leaves. In holding that such conduct constituted unlawful discrimination

---

[3] The department under Keats' supervision apparently consisted exclusively of women. No evidence regarding treatment of male employees in other departments was adduced.

violative of title VII, Mr. Justice Rehnquist, writing for the court, noted that it was beyond question that the employer's policy "acts both to deprive them [pregnant women] 'of employment opportunities' and to 'adversely affect [their] status as an employee.' " (434 U.S. 136, 141, 54 L. Ed. 2d 356, 363, 98 S. Ct. 347, 351.) The employer had "not merely refused to extend to women a benefit that men cannot and do not receive, but ha[d] imposed on women a substantial burden that men need not suffer." (434 U.S. 136, 142, 54 L. Ed. 2d 356, 364, 98 S. Ct. 347, 351.) A policy which "burden[s] female employees in such a way as to deprive them of employment opportunities because of their different role" visits discrimination violative of the statute. 434 U.S. 136, 142, 54 L. Ed. 2d 356, 364, 98 S. Ct. 347, 351.

The court in *Satty* evaluated the employer's policy *vis-a-vis* women who were not pregnant. (434 U.S. 136, 140 n.3, 54 L. Ed. 2d 356, 363 n.3, 98 S. Ct. 347, 350 n.3.) Pregnant women were thus treated as a distinct class to be accorded the protections of title VII. The court also focused upon the *burden* imposed by the employer's policy and, therefore, distinguished *Satty* from *General Electric Co. v. Gilbert* (1976), 429 U.S. 125, 50 L. Ed. 2d 343, 97 S. Ct. 401, wherein the court held an employer's denial of pregnancy related medical *benefits* did not violate title VII. See also *Illinois Bell Telephone Co. v. Fair Employment Practices Com.* (1980), 81 Ill. 2d 136, 142-43, 407 N.E.2d 539 (denial of pregnancy related medical benefits did not violate section 3(a) of the FEPA, in accordance with *Gilbert*).

■■ We believe the instant case is analogous to the facts and statute in *Satty*. Here, plaintiff's stated reason for laying off Woods was its belief she was pregnant. All pregnant women in the department, as a class, were laid off at that time. That class suffered a substantial burden which adversely affected the class' employment opportunities with plaintiff. And, like the woman in *Satty*, the burden was the result of the class' different role in society. Thus, evidence of disparate treatment of men and women in this case is not necessary. The necessary allegations for a *prima facie* claim of discrimination with respect to pregnancy are, therefore, that complainant is pregnant and that she was laid off because she was pregnant. (See, *e.g., A. P. Green Services Division of Bigelow-Liptak Corp. v. Fair Employment Practices Com.* (1974), 19 Ill. App. 3d 875, 312 N.E.2d 341 (race discrimination).) We conlude the Commission properly focused upon these allegations which constitute the *prima facie* claim of discrimination with respect to pregnancy.

### III

■■ The remaining contentions raised by plaintiff may be grouped under the claim that the Commission's order is not supported by the evidence.

Our supreme court has recently reiterated the scope of review regarding decisions of the Commission: "[T]he decision by the Commission will not be set aside unless it is contrary to the manifest weight of the evidence." (*Eastman Kodak Co. v. Fair Employment Practices Commission* (Docket No. 53535, June 26, 1981), ___ Ill. 2d ___, ___ N.E.2d ___ (slip op. at 11).) Review of the record discloses Woods proffered evidence that she was pregnant at the time of the layoff, that plaintiff's authorized agent knew or believed her to be pregnant at that time, and that plaintiff's agent selected her for layoff as a result of that belief. Thus, plaintiff was responsible for going forward with evidence to rebut Woods' *prima facie* case. Plaintiff adduced evidence showing Woods was at one time a poor employee, but the effect of that evidence was tempered by testimony that Woods received a subsequent raise in salary and accompanying good work evaluations. Much of the testimony regarding the motivation for Woods' selection for layoff was corroborated. Dr. Halloway was unable to determine Woods' pregnancy status during November of 1974. Woods' testimony was therefore uncontested on this fact. Our review of these facts in the light of the record as a whole convinces us that the circuit court did not err in finding that the decision and order of the Commission were not contrary to the manifest weight of the evidence.

In accordance with the aforestated reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

STAMOS and PERLIN, JJ., concur.