THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant and Cross—Appellee, v. GEORGE B. GRAWE, Defendant-Appellee and Cross-Appellant.—(Civil Service Commission, State of Illinois, Defendant-Appellee.)

Fourth District No. 4—82—0519

Opinion filed March 16, 1983.

338

TRAPP, J., dissenting.

Tyrone C. Fahner, Attorney General, of Springfield (Edward M. Kay, Assistant Attorney General, of counsel), for appellant.

John M. Hosteny, of Cavanagh Law Offices, of Springfield, for appellee George B. Grawe.

JUSTICE GREEN delivered the opinion of the court:

Plaintiff, the Illinois Department of Transportation (Department), appeals a judgment of the Sangamon County circuit court entered on July 12, 1982, affirming an order of the Civil Service Commission which provides that defendant Grawe be reinstated to his position as a highway maintainer with the Department.

The chain of events which gives rise to this litigation dates back to October 1977 when Grawe suffered a heart attack. He did not perform any work for the Department after October 21, 1977, but remained on the payroll through January 3, 1978, when he requested and received a leave of absence due to his inability to return to work. On January 25, 1978, following a determination by the Department's Central Claims Office that Grawe's heart attack was noncompensable because it was not work-related, Grawe filed a workers' compensation claim with the Illinois Industrial Commission. An arbitrator subsequently awarded Grawe $160.25 per week for life, for the reasons, *inter alia*, that the heart attack constituted "accidental injury arising out of and in the course of [Grawe's] employment" and that "the injuries sustained caused the complete disability of [Grawe], rendering [him] wholly and permanently incapable of work." On January 20, 1979, the Department petitioned the Industrial Commission for review of the arbitrator's decision.

Grawe underwent a successful coronary bypass operation on July 2, 1979. In October 1979, the Department and Grawe agreed upon a settlement of Grawe's workers' compensation claim. The settlement agreement which Grawe signed provides as follows:

"Thirty-five Thousand Dollars ($35,000.00) in a lump sum settlement, to include Fifteen Hundred Dollars ($1,500.00) medical expenses not paid to date, all other medical expenses being the obligation of the state. It is agreed and understood by all concerned that this is a full, final and complete settlement for all claims stemming from the injury described in this contract and it is expressly understood that neither party may reopen this case under any section of the Workman's Compensation Act. This lump sum settlement is requested to settle this disputed case."

On March 17, 1980, Dr. Jumonville, Grawe's personal physician, submitted a written statement to the Department to the effect that Grawe was fit to return to work, and during the same month Grawe requested that he be reinstated to his position as a highway maintainer. Grawe renewed this request in July 1980.

In December 1980, Grawe received a letter from the Department to the effect that he would either have to resign his position or be involuntarily terminated. Formal charges for discharge were filed against Grawe on January 2, 1981. The charges alleged that because Grawe represented to the Industrial Commission that he was "permanently and totally disabled," because the arbitrator ruled that Grawe was "totally disabled" and "wholly and permanently incapable of work," and because Grawe was "awarded the equivalent of a 40% permanent total disability," he was "estopped from denying that he had lost the ability to perform work for the Department."

At Grawe's request, a hearing on the charges was held before a hearing officer of the Civil Service Commission, who rejected the Department's contentions and recommended that Grawe be reinstated to his position with the Department. This decision was adopted and approved by the full Commission on April 16, 1981.

On May 22, 1981, the Department filed a complaint for administrative review of the Civil Service Commission's decision. Following a hearing, the Sangamon County circuit court rendered the following decision on July 9, 1981:

"The Court finds that the doctrine of estoppel does not apply in this case and that the decision of the Civil Service Commission that George P. Grawe was improperly discharged is in accord with the manifest weight of the evidence and is affirmed. The Court also believes that the question of whether or not Grawe should be reinstated was not decided and should be the subject of additional medical testimony. In the event the parties cannot enter into a stipulation on this point, then the matter is

remanded for additional testimony. Cause stricken."

Since the parties could not agree as to Grawe's physical condition, a second hearing was held before a Civil Service Commission hearing officer on October 26, 1981. The hearing officer found that the record did not support the Department's contention that Grawe was unfit to perform the duties of a highway maintainer and recommended that he be reinstated in his former position. The Civil Service Commission adopted this recommendation on November 19, 1981.

On February 5, 1982, the circuit court ordered the Department to file a "Supplement to Complaint" and ordered Grawe to file an answer thereto. At the same time that he filed his answer to the Department's supplement to complaint, Grawe also filed a motion to dismiss the supplement to complaint on the ground that a copy thereof was not filed in the circuit court and a summons was not issued within 35 days of the date that a copy of the Civil Service Commission's decision of November 19, 1981, was served upon the Department. Following a hearing, the circuit court affirmed the decision of the Commission in an order filed on July 12, 1982. The court did not specifically rule upon Grawe's motion to dismiss the Department's supplement to complaint.

Before considering the merits of this case, we first address Grawe's contention that the circuit court erred in that it did not dismiss the Department's supplement to complaint. Section 3—103 of the Code of Civil Procedure provides in pertinent part:

> "Commencement of action. Every action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby." Ill. Rev. Stat. 1981, ch. 110, par. 3—103.

The record reveals that the decision of the Civil Service Commission which followed the circuit court's remand order was filed on November 19, 1981, and that a copy of this decision was forwarded to the Department by the Department of Personnel on November 24, 1981. The Department's supplement to complaint was filed on February 23, 1982, which was obviously more than 35 days after the Department's presumed receipt of a copy of the Civil Service Commission's decision. Thus the question of whether the Department's filing its supplement to complaint amounted to the initiation of a new action for administrative review, as opposed to a continuation of the action in which the remand order of July 9, 1981, was entered is dispositive of this issue.

As support of his contention that the circuit court divested itself of jurisdiction of the case when it entered its remand order of May 22, 1981, Grawe relies principally on *Creamer v. Police Pension Fund Board* (1978), 69 Ill. App. 3d 792, 387 N.E.2d 711. The *Creamer* court did indeed state that whenever Illinois courts have intended to retain jurisdiction upon remand, a specific provision to that effect has been included in the order of remandment.

Recently, however, *Creamer* was implicitly overruled by *Mitrenga v. Martin* (1982), 110 Ill. App. 3d 1006, 443 N.E.2d 268, where the first district held that when a circuit court properly remands a cause to an administrative agency for further proceedings, jurisdiction remains with the circuit court until the court examines the results of the additional proceedings. Decisions from other jurisdictions generally support the *Mitrenga* court's resolution of this issue. See *e.g., Ford Motor Co. v. National Labor Relations Board* (1939), 305 U.S. 364, 83 L. Ed. 221, 59 S. Ct. 301; *State ex rel. Public Service Com. v. Boone Circuit Court* (1956), 236 Ind. 202, 138 N.E.2d 4; and *Connor v. Celanese Fibers Co.* (1978), 40 Md. App. 452, 392 A.2d 116.

■ Moreover, it is rather apparent from the language of the remandment order itself that the circuit court did not intend to divest itself of jurisdiction of this cause in remanding it to the circuit court, for the remand order states that the cause is being remanded for the production of *additional* testimony as to whether Grawe is entitled to reinstatement. The words, "cause stricken," which the court appended to its order, do not require a contrary result, for those words are not in themselves determinative of whether the court intended to retain jurisdiction of the cause. Instead, they must be construed in the context of the order in which they appear. (See generally *Aikman v. South* (Ky. 1906), 97 S.W. 4.) It is likely that in the case at bar, the circuit court merely used these words to indicate that the cause was stricken from the court's current docket of cases.

■ The Department contends that Grawe is barred from asserting that he is able to perform the duties of his former job on the basis of the judicial estoppel, equitable estoppel, and collateral estoppel doctrines. The doctrine of judicial estoppel provides that when a party assumes a particular position in a legal proceeding, that party is estopped from asserting a contrary position in a subsequent proceeding. (*Finley v. Kesling* (1982), 105 Ill. App. 3d 1, 433 N.E.2d 1112.) In order for the doctrine of judicial estoppel to apply, a five-factor test must be fulfilled: (1) The two positions must be taken by the same party; (2) the positions must be taken in judicial or quasi-judicial administrative proceedings; (3) the records of the two proceedings must

clearly reflect that the party sought to be estopped intended the triers of fact to accept the truth of the facts alleged in support of the positions; (4) the party taking the positions must have been successful in asserting the first position and must have received some benefit thereby in the first proceeding; (5) the two positions must be totally inconsistent. *Department of Transportation v. Coe* (1983), 112 Ill. App. 3d 506.

In *Coe*, a Department of Transportation employee entered into a lump sum settlement of a workers' compensation claim after his physician stated in a letter to the Department that he was entitled to 20% "permanent partial disability to the body as a whole." The settlement agreement which Coe signed provided in effect that the settlement represented 20% permanent disability. We held that Coe was judicially estopped from subsequently asserting that he was once again capable of performing his former duties with the Department. There is, however, one salient difference between *Coe* and the case at bar— the record of the present case contains absolutely no statements by Grawe that he is permanently disabled or permanently unable to perform his work as a result of his heart attack. The settlement agreement says nothing about the extent of Grawe's physical disability. Grawe's sole admissible statement as to his physical condition at the arbitration hearing on his workers' compensation claim (which took place prior to his coronary bypass operation) was that when he lifted heavy objects he became short of breath and nauseated.

■ In support of its judicial estoppel argument, the Department points to statements of Grawe's physicians which Grawe placed in evidence at the arbitration hearing on his workers' compensation claim, that "the patient is totally disabled *at the present time* and the length of his disability is undeterminable *at this time*" (emphasis added) and that "in view [of the fact that Grawe's heart attack was a job-related injury] Mr. Grawe should [not] continue the type of occupation which he has pursued in the past." Neither of the above constitutes an explicit statement that Grawe is permanently disabled, however. Furthermore, the doctrine of judicial estoppel is inapplicable to statements made in the course of prior proceedings by witnesses for a party against whom the doctrine is sought to be asserted. *Louisville & Nashville R.R. Co. v. Johns* (1958), 267 Ala. 261, 101 So. 2d 265; see *Hartray v. City of Chicago* (1916), 197 Ill. App. 446.

■ The decision of the Industrial Commission arbitrator does indeed contain a statement that the arbitration award is based on the fact that Grawe is "wholly and permanently incapable of work," but this obviously does not amount to a "position" which Grawe assumed

as to a particular matter. Also, the settlement agreement which was adopted by the Industrial Commission superseded the arbitrator's decision, and that decision was of no further force or effect following the Industrial Commission's adoption of the settlement agreement. Since Grawe did not at any time in the course of the workers' compensation proceeding assert that he was permanently disabled, his position in the proceeding before the Civil Service Commission, that he is once again capable of performing the duties of his former job, is not inconsistent with any position which he assumed in the workers' compensation proceeding. Therefore, the doctrine of judicial estoppel is inapplicable to this case.

The gravamen of the Department's equitable estoppel argument is that Grawe should have notified the Department of his coronary bypass operation prior to settling his claim against the Department, and that by failing to do so, Grawe misled the Department into believing that he was permanently incapacitated from performing his duties as a highway maintainer at the time of the settlement. In order for the doctrine of equitable estoppel to apply, the following elements must be present:

> "(1) Words or conduct by the party against whom the estoppel is alleged constituting either a misrepresentation or concealment of material facts; (2) knowledge on the part of the party against whom the estoppel is alleged that representations made were untrue; (3) the party claiming the benefit of an estoppel must have not known the representations to be false either at the time they were made or at the time they were acted upon; (4) the party estopped must either intend or expect that his conduct or representations will be acted upon by the party asserting the estoppel; (5) the party seeking the benefit of the estoppel must have relied or acted upon the representations; and (6) the party claiming the benefit of the estoppel must be in a position of prejudice if the party against whom the estoppel is alleged is permitted to deny the truth of the representations made." *Stewart v. O'Bryan* (1977), 50 Ill. App. 3d 108, 110, 365 N.E.2d 1019, 1020-21.

■ In the case at bar, none of the previously described statements of Grawe and his physicians which were tendered at the workers' compensation proceeding amounted to a misrepresentation or concealment of a material fact. Instead, they were merely descriptions of Grawe's physical condition at that time. Moreover, during the negotiations prior to the settlement of Grawe's workers' compensation claim, neither Grawe nor his attorney were under a duty to volunteer

the information that Grawe had undergone a coronary bypass operation. Since Grawe made no misrepresentations to the Department as to his physical condition and neither Grawe nor his counsel were under a duty to voluntarily disclose the fact that Grawe had undergone a coronary bypass operation, the first requirement for the applicability of the doctrine of equitable estoppel is not present. *Ergo*, Grawe is not equitably estopped from asserting that he is capable of performing the duties of his former job.

■■ The Department further asserts that the doctrine of collateral estoppel prohibits Grawe from contending that he is able to resume his former job duties with the Department. The doctrine of collateral estoppel states that when a certain issue of fact has been decided in a lawsuit or administrative proceeding and the same issue of fact arises in a subsequent lawsuit or administrative proceeding between the same parties, the resolution of that issue in the first action will control its resolution in the second, regardless of whether the cause of action is the same in both proceedings. *Hoffman v. Hoffman* (1928), 330 Ill. 413, 161 N.E. 723; *Casson v. Nash* (1977), 54 Ill. App. 3d 783, 370 N.E.2d 564; *Dempsey v. City of Harrisburg* (1971), 3 Ill. App. 3d 696, 279 N.E.2d 55.

■■ ■ As the Department points out, approval of a settlement of a workers' compensation claim by the Industrial Commission constitutes a decision of the Commission and is the equivalent of an award by the Commission. (*Ahlers v. Sears, Roebuck Co.* (1978), 73 Ill. 2d 259, 383 N.E.2d 207.) This principle is not, however, dispositive of our decision as to this issue, since the settlement agreement which was approved by the Industrial Commission contains no statement that Grawe is permanently disabled. The decision of the Industrial Commission arbitrator does contain such a statement, but that decision was superseded by the settlement agreement which the Commission approved. The settlement agreement, and not the arbitrator's decision, represents the final determination of the Industrial Commission as to Grawe's workers' compensation claim. (See *Adams v. City of Anadarko* (1949), 202 Okla. 72, 210 P.2d 151.) Because the settlement agreement contains no statement as to whether Grawe is permanently disabled, that question was obviously not decided by the Commission. Therefore, Grawe is not collaterally estopped from asserting that he is capable of resuming his former employment with the Department.

The Department finally asserts that the decision of the Civil Service Commission was contrary to the manifest weight of the evidence, but this argument is premised solely on the Department's contention that Grawe is estopped from asserting that he is capable of perform-

ing his old job with the Department. It follows from what we have said above that this contention is without merit.

For the foregoing reasons, we affirm the decision of the circuit court of Sangamon County.

Affirmed.

MILLS, J., concurs.

JUSTICE TRAPP, dissenting.

I would hold that this record discloses that Grawe's claim for reinstatement should be barred by reason of judicial estoppel.

His award was made following a hearing before an arbitrator in December 1978. That award, entered as of January 1979, found that the injuries sustained resulted in complete disability and permanent incapacity for work. This finding was a necessary background for the subsequent settlement. Grawe's testimony as to his incapacity was a factor of the award.

Grawe testified that subsequent to the award his doctor suggested bypass surgery and the probable improvement of his physical condition. That surgery was performed in July 1979. The petition for lump settlement filed in October 1979 alleged in part:

"The following award by an Arbitrator *** (b) $160.25 per week for life;

* * *."

Thereafter, in March 1980, Grawe initiated his request for reinstatement, claiming complete fitness.

This record discloses such representation of permanent disability in procuring the lump sum settlement that Grawe should be judicially estopped from claiming reinstatement.