BECKY ANN SAAL, Plaintiff-Appellant, v. THE COUNTY OF CARROLL
*et al.*, Defendants-Appellees.

Second District   No. 2—88—0768

Opinion filed March 29, 1989.

328

John P. Duggan, of Lowe & Steinmetz, Ltd., of Aurora, for appellant.

Val Gunnarsson, State's Attorney, of Mt. Carroll (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Becky Ann Saal, appeals from a judgment order in favor of defendants, County of Carroll (County) and County Board of Carroll County (Board), with regard to her complaint pursuant to the Administrative Review Law (Act) (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.*) challenging her dismissal as county supervisor of assessments. On appeal, plaintiff contends that the Board's failure to notify her of 6 of the 10 charges against her until five minutes before the hearing was a due process violation and that the Board's decision to uphold the termination was against the manifest weight of the evidence. Defendant contends that the circuit court lacked jurisdiction when it made its final ruling because plaintiff failed to file a new complaint for administrative review after a remand to the Board from the circuit court. We reverse.

On August ·8, 1985, plaintiff received a letter from Albert Ehringer, chairman of the Board, advising her that she had been dismissed from her position as county supervisor of assessments, effective immediately. The letter cited the following four reasons for the dismissal: (1) failure of her office to perform the farmland reassessment; (2) failure to have her office issue certificates of error during a prolonged absence by plaintiff; (3) failure to do all things required at her annual meeting with township assessors; and (4) failure to finish work on real estate declaration forms and submit them to the appropriate State agency in timely fashion. Plaintiff requested a hearing before the Board, which was set for September 12, 1985.

On the morning of the hearing, plaintiff received a list of reasons for her dismissal. The list contained the following reasons: (1) failure to accomplish the farmland reassessment; (2) failure to provide for the issuance of certificates of error during a seven-day absence from work; (3) failure to submit and process real estate transfer declarations in a timely manner as required by law; (4) failure to deliver the assessment books to township assessors by January 1, as required by law; (5) failure to submit the tentative abstract to the Department of Revenue in a timely manner; (6) failure to have the assessment books signed by the Board of Review prior to sending the final abstract to the Department of Revenue; (7) failure to record the minutes of 1984 Board of Review hearings into the log book; (8) failure to prorate the assessment of the First Brethren Church of Lanark; (9) failure to properly reassess the Shilling property; and (10) failure to prepare a list of exempt property requested by the Department of Revenue. Although plaintiff's counsel objected to the introduction of any evidence at the hearing concerning charges not mentioned in the August 8 ter-

mination letter, such evidence was presented and considered by the Board.

Ron Kane testified that he was hired by plaintiff to serve as deputy supervisor of assessments commencing June 17, 1985. When plaintiff was dismissed, he became acting supervisor of assessments. Kane testified that the farmland reassessment could not have been completed by the January 1, 1986, deadline considering the progress that had been made as of August 1, 1985. Kane stated that if work had commenced on the project at the time plaintiff became supervisor of assessments, it could have been completed.

According to Kane, plaintiff took a vacation in July 1985 and missed seven days of work. Plaintiff did not give Kane the authority to issue certificates of error during this period, and Kane was not aware of any employee who had been given such authority. Kane turned away two or three people during this time who requested certificates of error.

Kane testified that when a real estate sale takes place in the county, the county clerk's office sends a real estate transfer declaration form to the supervisor of assessments' office. The supervisor's office must fill in certain information on the form and submit it to the Department of Revenue no later than the 15th day of the month after the sale took place. Kane stated that the real estate transfer declaration forms for March, April, May, and June 1985 were not submitted to the Department of Revenue until August 1985.

According to Kane, the supervisor of assessments receives two copies of the assessment books each year from the county clerk. The supervisor is required to transmit one copy of the appropriate assessment book to each township assessor by the end of the year. Kane stated that he heard from Vivian Eaton, another employee in the office, that plaintiff failed to turn the books over to the township assessors by the January 1, 1985, deadline and did not accomplish this task until April. Plaintiff's counsel objected to this testimony on the basis of hearsay, but it was admitted.

Kane stated that a tentative abstract which the supervisor of assessments is supposed to prepare was not transmitted to the Department of Revenue by the required time. He also stated that plaintiff, who, in her capacity as supervisor of assessments, was also clerk of the County Board of Review, failed to have the Board sign the assessment books prior to the submission of the final abstract of assessed valuation to the Department of Revenue as required by law. The abstract was submitted on March 27, 1985, and the assessment books were not signed until August 21, 1985.

The Board of Review holds hearings on appeals of assessments by property owners. Plaintiff, as clerk, was supposed to take minutes of those meetings and transfer the minutes into a log book. Plaintiff had not transferred the minutes into the log book, according to Kane, at the time of her dismissal.

After Kane became acting supervisor of assessments, the First Brethren Church of Lanark sought a proration of their assessment as of the date that the church had a certain improvement removed. Kane granted the request. The church had previously made the same request to plaintiff, but she refused the proration. Kane also stated that plaintiff reassessed the Shilling property using the method set forth in the farmland reassessment bill even though, in Kane's opinion, the property did not meet the criteria of the farmland assessment law and should therefore have been assessed according to another method.

Kane also testified that plaintiff received a letter from the Department of Revenue dated October 24, 1984, requesting a list of exempt property in the county. Plaintiff did not comply with this request, which resulted in an audit of the office that was currently taking place.

Homer Byers testified that he was a member of the Carroll County Board and chairman of the Board's committee on finance and assessment. This committee interviewed plaintiff before her appointment as supervisor of assessments. Byers, Board chairman Donald Swanson, and the other committee members were present. They advised plaintiff of the deadline for the farmland reassessment and that the reassessment was to be performed by the personnel in the supervisor of assessments' office. Plaintiff stated that she could complete the work if she could purchase some new equipment and hire some extra people. The Board appropriated funds in order to enable plaintiff to hire two additional part-time employees, Vivian Eaton and Dawn Rath, who began work in December 1984. The Board also gave her the authority to purchase extra equipment.

In July 1985, Byers heard from Board of Review member Dean Lower that plaintiff's office had ceased work on the farmland reassessment in April. This testimony was admitted over the hearsay objection of plaintiff's attorney. Byers testified that plaintiff acknowledged contacting the Manatron Company in April 1985 to pursue the possibility of having it perform the farmland reassessment. Plaintiff never informed the Board that she was having difficulty completing the reassessment. Byers felt that plaintiff's unwillingness to perform the reassessment was demonstrated by the fact that Vivian Eaton stopped working on the program and assumed front office responsibil-

ities. The cessation of work on the project by plaintiff's office forced the Board to hire an outside firm to complete the farmland reassessment at a cost of $43,700.

Byers stated that the firing of Karen Zink, a full-time employee in plaintiff's office, came as a complete surprise to the Board and that the Board did not fire her. Byers did not know why Dawn Rath was fired. According to Byers, plaintiff had the authority and the money in her budget to hire replacement employees.

Plaintiff testified that she worked as Carroll County supervisor of assessments for 15 months and one week prior to her dismissal. There were two employees in the supervisor's office when she began work there. Plaintiff stated that one of her duties was to guide and instruct the township assessors. According to State statute, the township assessors were supposed to assess the property in their townships and determine a level of assessment consistent with State and county law. At the time plaintiff became supervisor of assessments, the township assessors had not performed these tasks for about 10 years. These duties were performed by plaintiff's office instead.

Plaintiff's office was also required to develop from information provided by the county clerk's office boundary lines between properties on an aerial photograph and was also required to determine property ownership. Plaintiff was also required to notify taxpayers of any change of value in their property as a result of action taken by her office or a township assessor. Plaintiff's office was accomplishing these tasks during her tenure, in addition to assessing new construction.

Plaintiff testified that before she took office, a firm called Vanguard Appraisal had performed a reappraisal of the county. Plaintiff's office was required to update its records with the data from the reappraisal, to develop a level of assessment, and to send notices to taxpayers of any resulting value changes. This work was being accomplished by plaintiff's office. Plaintiff testified that during a certain 15-day period, about 300 members of the general public came into the office each day with questions about the reassessment. Ordinarily, only about two or three members of the public per day went to plaintiff's office.

When plaintiff became supervisor of assessments, the office had two full-time employees and no part-time employees. Plaintiff added one part-time clerical worker in the summer of 1984 who usually only worked four to six hours per week. In December 1984, plaintiff hired two more part-time employees, Vivian Eaton and Dawn Rath, to work on the farmland reassessment. Plaintiff stated that she attended a

Board personnel committee meeting in mid-January 1985 and was directed to terminate one of her part-time employees. Dawn Rath was fired as a result.

Plaintiff fired Karen Zink, one of the full-time employees, on April 11, 1985, because she was not performing certain duties, including preparation of the township assessor books for the 1985 tax year. When Zink was fired, Vivian Eaton requested her job, and plaintiff moved Eaton into the front office. Eaton stopped work on the farmland reassessment at this time. In May another full-time employee, Candy Bouch, left her position. Plaintiff hired Ron Kane to replace her in June.

Around June 1, 1985, plaintiff spoke to Homer Byers of the Board's personnel committee about having Vivian Eaton reclassified as a permanent full-time employee. Byers said that this sounded reasonable to him. Plaintiff never heard from Byers again on this matter and never received the authority to reclassify Eaton. Since Eaton's temporary position was not technically vacant, plaintiff was unable to hire a new temporary employee. Plaintiff did not speak to anyone on the Board except Byers about reclassifying Eaton.

At the time plaintiff was terminated, work on the farmland reassessment had been temporarily halted because all remaining employees were needed for the day-to-day operation of the office. About 2,500 parcels of farmland remained to be reassessed. Since Vivian Eaton had moved to the front office in April 1985, only five or six parcels had been reassessed.

Plaintiff stated that she missed seven working days in 1985 at the end of June because she took a vacation. She was subsequently reprimanded by Board Chairman Ehringer for failing to inform the Board about her vacation, although she was aware of no policy requiring her to do so.

With regard to the real estate transfer declarations forms, plaintiff testified that a former office employee named Mary Lang had worked on the forms in 1984. Lang was dismissed by plaintiff in August 1984 for poor performance. In November 1984, the Department of Revenue notified plaintiff that about 400 of the forms would have to be returned to her office and corrected because of inaccurate or incomplete information.

Plaintiff testified that she did not prorate the assessment of the First Brethren Church of Lanark because the church had failed to file an exempt status request as required by law. She testified that the Board of Review, not her office, reassessed the Shilling property.

Plaintiff admitted that she received a letter from the Department

of Revenue in October 24, 1984, requesting a list of exempt property. Plaintiff called and told the Department her office would provide them such a list the following year. In July 1985, plaintiff and the Assistant Director of the Department of Revenue discussed having the Department send out an auditor to help plaintiff's office prepare the list.

At the conclusion of the hearing, the Board voted to reaffirm plaintiff's dismissal. Plaintiff filed a timely complaint challenging the dismissal with the circuit court of Carroll County pursuant to the Act. The circuit court agreed with plaintiff's contention that the notice given to her of most of the charges on the morning of the hearing was inadequate. The court also concluded that a remand was necessary because the Board failed to make findings of fact at the original hearing. In remanding the case, the court directed the Board to permit plaintiff to present any additional evidence she might wish to present.

The new hearing before the Board took place on June 19, 1986. Plaintiff was given an opportunity to present new evidence but declined to do so. Her attorney argued that the farmland reassessment was a statutory duty of the township assessors rather than the supervisor of assessments. The Board voted to adopt 18 findings of fact that had already been prepared and reaffirmed plaintiff's dismissal.

On August 22, 1986, plaintiff filed a motion with the circuit court to limit consideration of the record and to reverse the Board's decision. For reasons not apparent from the record, the trial court did not rule on the motion until July 13, 1988, when it issued an order affirming the dismissal. Plaintiff now appeals.

■ As a preliminary matter, we note that while both parties have treated this as a proceeding under the Act, the Act does not apply to review of a decision to terminate a county supervisor of assessments. (*Maddox v. Williamson County Board of Commissioners* (1985), 131 Ill. App. 3d 816, 821-22, 475 N.E.2d 1349, 1353.) Such a decision is only reviewable by means of common law *certiorari*. (*Maddox*, 131 Ill. App. 3d at 822, 475 N.E.2d at 1353.) The court held, however, in *Maddox* that even though plaintiff's complaint was filed under the Act, it was sufficient to vest the circuit court with jurisdiction to review the matter by means of common law *certiorari*. (131 Ill. App. 3d at 822, 475 N.E.2d at 1354.) Accordingly, we conclude that plaintiff's complaint initially vested the trial court with jurisdiction to consider the Board's ruling.

Defendants argue that the circuit court lost jurisdiction when it remanded the matter to the Board and that plaintiff was required to

file a new complaint in order to revest the court with jurisdiction. In *Creamer v. Police Pension Fund Board* (1978), 69 Ill. App. 3d 792, 387 N.E.2d 711, the court held that if a circuit court remands an administrative matter to an agency for a hearing *de novo* and does not expressly reserve jurisdiction in the remand order, the circuit court loses jurisdiction. (69 Ill. App. 3d at 793, 387 N.E.2d at 713.) Under such circumstances, according to the court in *Creamer*, a new complaint must be filed in order to revest jurisdiction in the circuit court after the agency issues its decision upon remand. (69 Ill. App. 3d at 793, 387 N.E.2d at 713.) In the case at bar, the remand order of the circuit court did not expressly reserve jurisdiction, and plaintiff did not file a second complaint with the circuit court when the Board made its decision following remand.

■ We agree, however, with the conclusion of the court in *Department of Transportation v. Grawe* (1983), 113 Ill. App. 3d 336, 447 N.E.2d 467, that *Creamer* is not good law. (*Grawe*, 113 Ill. App. 3d at 341, 447 N.E.2d at 470.) A circuit court order in an administrative review matter remanding the cause to the agency for a new hearing or for further proceedings involving disputed issues of law or fact is not a final order. (*Wilkey v. Illinois Racing Board* (1983), 96 Ill. 2d 245, 249, 449 N.E.2d 843, 844; *Mitrenga v. Martin* (1982), 110 Ill. App. 3d 1006, 1008, 443 N.E.2d 268, 270.) In *Mitrenga*, the court stated as follows:

> "Where the circuit court has the power to remand an agency decision for further hearings or proceedings, we feel that jurisdiction must necessarily remain with the circuit court until after disposition of these further matters. Only after the circuit court has examined the results of these additional proceedings will we recognize its subsequent order as being final and appealable." (110 Ill. App. 3d at 1008, 443 N.E.2d at 270.)

This language supports plaintiff's contention that the circuit court retained jurisdiction after it remanded the case to the Board.

■ Furthermore, section 3—104 of the Act states in part as follows:

> "The court first acquiring jurisdiction of any action to review a final administrative decision shall have and retain jurisdiction of the action until final disposition thereof." (Ill. Rev. Stat. 1987, ch. 110, par. 3—104.)

The circuit court's remand order directed the Board to hear any additional evidence plaintiff wished to present, reconsider its prior ruling, and make findings of fact. Since this order remanded the cause to the Board for further proceedings involving disputed questions of law and

fact, it was not final. (*Wilkey*, 96 Ill. 2d at 249, 449 N.E.2d at 844.) Under section 3—104, since the order was not a final disposition, the circuit court retained jurisdiction after remand. While section 3—104 is not applicable to common law *certiorari* proceedings, we do not see any reason why the outcome should be different in such a proceeding, especially in light of the similarities between judicial review under the Act and judicial review of administrative decisions by means of common law *certiorari*. (*Maddox*, 131 Ill. App. 3d at 822, 475 N.E.2d at 1353.) Accordingly, we decline to follow *Creamer*, and we hold that since the circuit court's remand order was not final, the court retained jurisdiction after remanding the matter to the Board.

■ Plaintiff argues that defendants' failure to notify her of most of the charges until minutes before the hearing was a due process violation. Due process of law requires definite charges and adequate notice of those charges. (*Florsheim Shoe Co. v. Illinois Fair Employment Practices Comm'n* (1981), 99 Ill. App. 3d 868, 871, 425 N.E.2d 1219, 1221.) In its order remanding the case, the circuit court agreed that there was a due process problem and directed the Board to reopen the hearing to allow plaintiff to present additional evidence in order to cure the problem. Defendants argue that the due process problem was vitiated by the reopening of the hearing, at which time plaintiff declined the opportunity to present additional evidence.

It seems readily apparent that plaintiff received inadequate notice of most of the charges against her before the initial Board hearing and that there was a due process violation. We must determine whether the trial court's remedy for this violation was adequate. Plaintiff's only assertion in this regard is that the reopening of the hearing to allow her to submit additional evidence was not an adequate remedy because the Board had already made up its mind, as evidenced by the fact that the Board ended up adopting findings of fact that were prepared before the hearing.

■ The assistant State's Attorney who represented defendants presented the proposed findings of fact to the Board at the hearing following remand, and the Board subsequently adopted those proposed findings. There is nothing unusual or improper about this procedure. Attorneys often present proposed findings of fact at the conclusion of trials or hearings. Since plaintiff has presented no valid reason to support her contention that the circuit court's remedy for the due process violation was inadequate, we reject that contention.

■ Plaintiff next asserts that the evidence presented at the initial Board hearing was insufficient to sustain her dismissal. The applicable standard in reviewing agency findings under common law *cer-*

*tiorari* is whether the findings of the agency are palpably or manifestly against the weight of the evidence. (*Maddox,* 131 Ill. App. 3d at 823, 475 N.E.2d at 1354.) In reviewing an administrative decision to discharge an employee, a court must also determine whether the findings of the agency are sufficient to support discharge under the applicable standard of conduct. (131 Ill. App. 3d at 823, 475 N.E.2d at 1354.) A decision to discharge will be overturned if it is arbitrary or unreasonable. *Batley v. Kendall County Sheriff's Department Merit Comm'n* (1981), 99 Ill. App. 3d 622, 626, 425 N.E.2d 1201, 1205.

■ The statute providing for removal of the supervisor of assessments during his or her term of office states in relevant part as follows:

> "[T]he county board, by a vote of ⅔ of its members, may dismiss a supervisor of assessments prior to the expiration of his term for misfeasance, malfeasance or nonfeasance in the performance of the duties of his office." (Ill. Rev. Stat. 1987, ch. 120, par. 484a.)

In *Johnson v. Macon County Board* (1982), 104 Ill. App. 3d 885, 433 N.E.2d 707, the court reviewed the dismissal of a county supervisor of highways under a statute authorizing removal for "incompetence, neglect of duty or malfeasance in office" (Ill. Rev. Stat. 1987, ch. 121, par. 5—201). The court determined that neglect of duty would only justify removal from office if it constituted a substantial failure to perform the official duties of the position (*Johnson,* 104 Ill. App. 3d at 892, 433 N.E.2d at 711-12), citing with approval the conclusion of the Arizona Supreme Court that nonfeasance and neglect of duty are synonymous and that nonfeasance is a substantial failure by an officer to perform his duty (see *Holmes v. Osborn* (1941), 57 Ariz. 522, 539-40, 115 P.2d 775, 783). Since, as the parties agree, the charges against plaintiff basically amount to charges of nonfeasance, the dismissal was proper only if the alleged nonfeasance constituted a substantial failure by plaintiff to perform her official duties. Additionally, there must be no sufficient excuse for plaintiff's failure to perform these duties. *Maddox,* 131 Ill. App. 3d at 24-26, 475 N.E.2d at 1355-56.

We will now examine the charges against plaintiff and the evidence relating to those charges. Most of this evidence resulted from the testimony of Ron Kane. Kane's testimony concerning most of the charges was sparse, with little, if any, explanation of the circumstances surrounding the charges or the significance or consequences of plaintiff's alleged omissions.

The charge that plaintiff took a seven-day vacation and failed to authorize anyone in her office to issue certificates of error appears to

be frivolous at best. A certificate of error is a certificate attesting to an error as to the valuation of real property in an assessment. (Ill. Rev. Stat. 1987, ch. 120, par. 526.) Since such certificates must be endorsed by a majority of the Board of Review (Ill. Rev. Stat. 1987, ch. 120, par. 526), they could not have been routinely issued by the personnel in plaintiff's office. The Board's finding that "[d]uring this time period, Carroll County taxpayers frequented her office to receive certificates of error, but were turned down" is entirely without support in the evidence. Ron Kane testified only that he personally turned away two or three taxpayers seeking certificates of error. This testimony hardly supports a finding that taxpayers were "frequenting" the office during plaintiff's vacation. Plaintiff, as the supervisor of the office and a member of the Board of Review, which had to endorse the certificates, may have validly believed that she should personally supervise the process for issuing certificates. Plaintiff's conduct in this regard did not constitute nonfeasance.

■ The only evidence that plaintiff failed to deliver the assessment books to the township assessors was the hearsay testimony of Ron Kane that Vivian Eaton told him this was not done. Plaintiff's attorney objected to this testimony, but it was admitted and considered by the Board. While certain technical evidentiary requirements may be relaxed in an administrative proceeding (*Eastman v. Department of Public Aid* (1989), 178 Ill. App. 3d 993, 996), the rule against hearsay is a fundamental rather than a technical rule (*Novicki v. Department of Finance* (1940), 373 Ill. 342, 344, 26 N.E.2d 130, 131; *Eastman*, 178 Ill. App. 3d at 996). Under these circumstances, where the only evidence supporting this charge was hearsay, the charge should have been rejected by the Board.

Kane testified that the tentative abstract was not transmitted to the Department of Revenue by the required time and that plaintiff failed to have the Board of Review sign the assessment books prior to the submission of the final abstract. Each of these alleged omissions appears to be minor, and there is no evidence in the record to the contrary. With regard to the tentative abstract, Kane did not testify as to when it was due or how late it was actually submitted. The scant evidence presented concerning these charges was not sufficient to support a finding of a substantial failure by plaintiff to perform the duties of her office.

The charge that plaintiff failed to record minutes from 1984 Board of Review meetings into a log book appears to be another frivolous charge. Ron Kane testified that plaintiff took the minutes for those meetings and that the 1984 minutes were on six legal pads

which had not been transcribed into a log book. Since the minutes were still available on the legal pads, this does not seem to be a significant act of nonfeasance. Furthermore, there has been no showing by defendants that this is an official duty of the supervisor of assessments.

Kane testified that plaintiff failed to provide the list of exempt property requested by the Department of Revenue in its October 24, 1984, letter. Plaintiff testified that Department representatives agreed to send an auditor to help plaintiff's office prepare the list, but this was not done. Since plaintiff's explanation was not rebutted, her failure to provide the list of exempt property cannot be considered nonfeasance.

Kane testified that he granted a proration to the First Brethren Church of Lanark because the church had removed an improvement. He stated that plaintiff had previously rejected the proration. Plaintiff testified that she denied the church's request because it failed to file an exempt status request as required by law. There was no evidence rebutting this testimony. The Board's finding that the paper work submitted by the church was timely and in proper form was not supported by any evidence.

Kane also testified that it was not proper for plaintiff to reassess the Shilling property using the new farmland reassessment procedure because it did not meet the criteria set forth in the farmland reassessment bill. (Ill. Rev. Stat. 1987, ch. 120, par. 501e.) His testimony did not specifically indicate which criteria the property did not meet or indicate the difference this made with regard to the amount of the assessment. Plaintiff denied that she even reassessed this property, testifying that this was done by the Board of Review. Due to the vagueness of Kane's testimony concerning this issue, it did not support a conclusion of substantial failure by plaintiff to perform her official duties.

The evidence revealed that the real estate transfer declaration sheets for March, April, May, and June 1985 were not submitted to the Department of Revenue by the supervisor of assessment's office until August 1985, even though they were due on the 15th day of the month after the sale took place. Ron Kane testified that after real estate sales occurred in the county, the county clerk's office sent plaintiff's office a real estate transfer declaration form. Plaintiff's office was then required to fill out certain information and submit the forms to the Department of Revenue. The evidence did not reveal when the forms in question were received from the county clerk's office by plaintiff's office. Absent such evidence, it is impossible to determine

whether plaintiff or the county clerk's office was culpable. The evidence relating to this charge was not sufficient to establish nonfeasance on plaintiff's part.

Plaintiff argues that her failure to perform the farmland reassessment cannot form the basis for her dismissal because it is not a statutory duty of the supervisor of assessments. By statute, as plaintiff admits, the supervisor of assessments is a member of the county farmland assessment review committee. (Ill. Rev. Stat. 1987, ch. 120, par. 501e.) The statute provides for a public hearing by the committee on or about June 1 of every year and states that if the committee agrees on certain matters "the chief county assessing official shall proceed with the farmland assessment process." (Ill. Rev. Stat. 1987, ch. 120, par. 501e.) Plaintiff, as supervisor of assessments, was the chief county assessing official. Ill. Rev. Stat. 1987, ch. 120, par. 501e.

■ In general, the assessment of property is a duty of county or township assessors, not the supervisor of assessments. (See Ill. Rev. Stat. 1987, ch. 120, par. 525.) The supervisor of assessments' statutory duty in this regard is to provide instruction to the assessors. (See Ill. Rev. Stat. 1987, ch. 120, par. 483.) We believe that the requirement in the farmland assessment statute that the chief county assessing official proceed with the farmland assessment process would only require the supervisor of assessments to provide instruction and guidance to township assessors, who would then be obliged to assess the land.

It is clear from the record that plaintiff did not do this and that she understood instead that the Board expected her office to perform the farmland reassessment. Plaintiff agreed that her office could do so, but only if she was permitted to hire extra help. Prior to the time plaintiff was hired, there were two full-time employees in the supervisor's office. No work had been done on the farmland reassessment at this point. Thus, the two full-time employees carried out the ordinary day-to-day business of the office.

In April 1985, plaintiff had two full-time employees who carried out the everyday responsibilities of the office. Vivian Eaton, a part-time employee, worked on the farmland reassessment. Plaintiff fired one of the full-time employees because she did not perform her duties. She then had Vivian Eaton cease work on the reassessment and take over front office duties. The other full-time employee unexpectedly quit shortly thereafter in May. Ron Kane replaced her in June. Plaintiff's testimony that she asked Homer Byers, chairman of the Board's finance and reassessment committee around June 1, 1985, to have Eaton reclassified so her part-time position would be open is unre-

butted, as is her testimony that the Board's failure to do so prevented her from filling the part-time position.

Under these circumstances, it appears that it was necessary for plaintiff to use her only two full-time employees to carry out front office responsibilities and that plaintiff was compelled to discontinue the farmland reassessment because of the Board's inaction on her request to reclassify Eaton. The only other employee, Michelle Strauch, who was only 17, worked only four to six hours a week at clerical tasks. Since plaintiff had a valid explanation for her suspension of work on the farmland reassessment, she cannot be considered guilty of nonfeasance.

We conclude that the Board's decision upholding plaintiff's dismissal was against the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Carroll County is reversed.

Reversed.

LINDBERG and McLAREN, JJ., concur.