LEROY WEISENRITTER, Plaintiff-Appellee, *v.* BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF BURBANK, *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 77-1330

Opinion filed August 2, 1978.—Modified on denial of rehearing February 7, 1979.

Vincent Cainkar, of Louis F. Cainkar, Ltd., of Chicago, for appellants.

Nicholas T. Kitsos, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

After a full hearing, the Board of Fire and Police Commissioners (the Board) of the City of Burbank found LeRoy Weisenritter, a city fire engineer, guilty of violating several rules and regulations of the Board and the Fire Department (the Department), including a prohibition against obtaining outside employment without departmental approval, and discharged him. On administrative review, without any findings of fact, the circuit court reversed the Board's decision and reinstated Weisenritter. On appeal, the Board argues that the trial judge erred in overturning its findings and decision, and contends that the Board's conclusion was not against the manifest weight of the evidence. We agree with this contention, and so reverse the order of the circuit court.

At his hearing, Weisenritter testified that he had been employed by the Department for almost 7 years, and was familiar with its rules and regulations. Four or five years earlier he had been employed by a drum manufacturing corporation, while simultaneously employed by the Department, and he had obtained written consent for that employment from the Department chief. Weisenritter admitted that he was an incorporator of the Burbank Alarm & Intercom Service, Inc., and a certified copy of the firm's incorporation papers was admitted into evidence. It showed that the corporation had existed for about 1 year, that Weisenritter was its secretary, and that 10 shares of corporate common stock had been issued. The exhibit also stated that one of the corporation's purposes was "to sell, install, distribute, repair and service fire and smoke detectors * * *." Weisenritter admitted in his testimony that he owned five of the corporation's 10 shares, and he had solicited business on behalf of the corporation and had been selling the corporation's goods or services. He agreed he had not obtained the fire chief's written consent to engage in that business because he "didn't think [he] had to."

Articles X, section 5d, and XIII, section 1 of the Department's rules and regulations provide as follows with respect to employees engaging in outside employment:

> "[That employees] engage in no other occupation or activity for compensation except that of the Fire Department without making application to the Chief of Department for approval. Nor shall they continue in other employment if the application is not approved.
> * * *

Full time employment by the Department, generally, shall constitute the sole employment of any employee. However, in recognition of the fact that personal situations do occur which make it necessary for employees to seek supplementary employment, outside employment may be permitted under certain conditions. *Because of the possibility of conflict of interest, Department employees are not allowed to work for any other organization, or engage in business for themselves, without the express written permission of the Chief of Department. Any employee seeking approval for outside employment must make written application for same to the office of the Chief and have it approved.* Approval authorizes outside employment for a period of one year from the time of approval, unless otherwise specified." (Emphasis added.)

Measured against these standards, the evidence introduced at the hearing clearly demonstrates that Weisenritter knowingly violated these rules and regulations. He was an incorporator and half-owner of a corporation selling fire alarm systems, and admitted selling its products or services; yet, he never sought the written permission of his supervisor, even though his having done so on a previous occasion demonstrated that he was aware of this requirement. Weisenritter's conduct was in distinct contravention of the Department's rules, and the activity he engaged in was precisely the type the rule was intended to prohibit. Article XIII, section 1, expressly states that "the possibility of conflict of interest" is a reason for the prohibition against dual employment. It is difficult to conceive of a situation more prone to create such conflicts than that of a fireman moonlighting by selling fire alarm systems. His position as a fireman may lead persons he approaches to have confidence in the systems he is selling as well as to believe they might receive better fire protection by dealing with a member of the fire department.

Although the circuit court appeared to base its reversal on the lack of a showing in the hearing before the Board that Weisenritter was compensated for his services, article XIII, section 1 of the Department's rules and regulations does not dispense with the need for written approval in the case of fire department employees who are not compensated for outside pursuits. That section's prohibition extends to employees who engage in business for themselves. This, in our opinion as well as that of the Board, covers a person who owns 50 percent of the stock and is an officer of a corporation on whose behalf he acts as a salesman.

When the circuit court reviews the decision of an administrative agency, the sole question is whether the findings and decision of the agency are against the manifest weight of the evidence. The Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 274) provides:

"The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct."

And this court has, on numerous occasions, described the proper role of the trial judge on administrative review. (See *Taylor v. Police Board* 1978), 62 Ill. App. 3d 486, 378 N.E.2d 285; *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 370 N.E.2d 1198.) In *Dante v. Police Board* (1976), 43 Ill. App. 3d 499, 502, 357 N.E.2d 549, the court stated:

"It is not the duty of the court to weigh the evidence before the Board, but rather its duty is to ascertain if the findings and decision of the administrative agency are against the manifest weight of the evidence. (*Schnulle v. Board of Fire & Police Commissioners* (1974), 16 Ill. App. 3d 812, 818, 306 N.E.2d 906.) The reviewing court determines only whether there is any evidence which fairly tends to support the Board's determination and its decision should not be reversed unless the opposite conclusion is clearly evident. (*Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d 864, 868, 278 N.E.2d 212.)"

■■ In this case, the Board's initial determination was in accord with the manifest weight of the evidence, and the trial judge erred in reversing its findings, for a conclusion contrary to the one the Board reached was not "clearly evident." (*Dante; Davenport.*) While the Board also found Weisenritter guilty of several other less significant violations of the Department's rules and regulations, it is unnecessary to review the evidence on these violations, for Weisenritter's transgression in engaging in outside employment with a strong likelihood of creating conflicts of interest, without procuring the necessary consent, clearly was sufficient to support his discharge.

Weisenritter argues that in any event his discharge was improper because he was never notified in writing of the offense which we have determined was established by the evidence. The charge against Weisenritter read:

"That on or about April 23, 1976, the said Leroy Weisenritter, as one of the owners of the Burbank Alarm and Inter-Com Service, Inc., did approach the occupants of the Certified Food Center at 6407 West 79th Street, Burbank, Illinois and attempt to sell them an alarm system; thereby he did engage in another business and occupation without receiving written permission, nor making any attempt to apply for approval to engage in another occupation, all in violation of Article X, Section 5D and Article XIII, Section 1 of the Rules and Regulations of the Fire Department of the City of Burbank."

And the Board's finding and decision included the following:

"That at the hearing held on March 30, 1977, * * * insufficient evidence was introduced to prove that the respondent approached the owners of the Certified Food Center and attempted to sell them an alarm system as set [forth] in Charge #3, but sufficient evidence was introduced, including the testimony of the respondent, that during the year 1976 * * * to prove that the respondent engaged in the business of selling and installing fire alarms under the corporate name of Burbank Alarm and Intercom Service, Inc. (a/k/a Burbank Alarm and Sound System Service, Inc.) within and without the City of Burbank, and that the respondent was an incorporator and officer in said corporation, all without the prior written approval of the Fire Chief in violation of Article X, Section 5D, and Article XIII, Section 1, of the Rules and Regulations of the Fire Department."

■■ As we read the charge, its tenor is that Weisenritter violated rules of the Department by engaging in outside employment or in business for himself in 1976 without permission. The charge as filed notified Weisenritter that it would be proved by an approach Weisenritter made to Certified Food Center when he attempted to sell that concern an alarm system. Instead, at his hearing, the charge of engaging in a prohibited business or occupation without permission was proved, as we noted above, by Weisenritter's own admissions. Thus, the charges filed adequately informed Weisenritter that the complaint against him was that he undertook outside employment or engaged in business for himself during the year 1976 and enabled him to prepare his defense to that charge. And Weisenritter openly admitted soliciting business and making sales for a corporation in which he owned a substantial stock interest and held an office. Even though, as the findings stated, there was insufficient evidence to prove that Weisenritter approached Certified Food Center, the proof was ample that Weisenritter engaged in the type of employment or business described in the charge preferred against him without permission of the city authorities. Indeed, Weisenritter's failure to raise the contention that he was not charged with the violation of which the Board found him guilty until he filed a petition for rehearing in this court indicates how well he understood the offense with which he was charged, and also shows that the Board's finding was a proper response to this charge and the evidence before it. Because the written charge against Weisenritter properly informed him of the prohibited course of conduct he allegedly followed, it was immaterial that his guilt was proved by a method different than that suggested by the charge. We therefore reject Weisenritter's plea that he has been deprived of due process of law and of his statutory rights under section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 10—2.1—17), which requires that he

be given written charges and an opportunity to be heard on them before being discharged.

Weisenritter also contends that the Board merged its prosecutorial and judicial functions and thereby violated his due process rights at the hearing, and that the Board lacked jurisdiction to conduct the disciplinary hearing. We find these two claims devoid of merit.

First, Weisenritter appeared to have received a full and impartial hearing. He was given ample time to prepare for his hearing, which took place more than 5 months after charges were filed. During the hearing, the Board was represented by the city attorney, who advised them on procedures and motions, and the complainant fire chief and city by the city prosecutor, in accordance with section 10—2.1—25 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 10—2.1—25). The Board had the right to compel Weisenritter to testify and to question him (*Kammerer v. Board of Fire & Police Commissioners* (1970), 44 Ill. 2d 500, 256 N.E.2d 12), and to subpoena records (Ill. Rev. Stat. 1975, ch. 24, par. 10—2.1—17). Further, the record reveals that Weisenritter and his own counsel participated fully in the hearing, and the counsel engaged in intensive cross-examination of witnesses.

While Weisenritter complains specifically of a colloquy among the Board and counsel after the attorney for the city had rested his case, arguing that this allowed the city's attorney further time to introduce evidence, the record shows that the discussion in question was limited to weeding out charges on which no evidence had been introduced. The record also indicates that no other evidence was introduced after the attorney for the city rested.

Weisenritter's complaint regarding his attorney's being instructed to make an offer of proof out of the Board's presence on what Weisenritter's duties were at a fire also lacks substance. In fact, his attorney actually agreed to this procedure, but failed to follow up and make the offer of proof. Also, this procedure could hardly be considered a serious enough infraction, even if viewed most favorably to Weisenritter, to have denied him his due process rights. If anything, this procedure was more likely to ensure rather than detract from due process fairness by insulating the Board from hearing anything that was inadmissible.

■ In sum, then, we reject Weisenritter's contention that the Board both prosecuted and tried his case, and so denied him a fair hearing; our review of the record indicates instead that he was given a full and fair hearing in which the Board was represented by an attorney who advised them on procedures and motions, and the complainant and city by an attorney who prosecuted the case. See *Westby v. Board of Fire & Police Commissioners* (1977), 48 Ill. App. 3d 388, 392, 362 N.E.2d 1098.

■ Second, the Board had the jurisdiction to conduct the hearing.

Weisenritter contends that grievance procedures in the collective bargaining agreement between the City of Burbank and the fire department union removed the Board's power to hold such hearings. However, section 10—2.1—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 10—2.1—17) expressly sets forth the procedure for removal or discharge in cases of this sort, and specifically grants the Board the right to discharge employees. This statutory directive imposes an integral duty and function upon the Board which cannot be delegated or abrogated by a collective bargaining agreement. Just as a school board has a nondelegable discretionary power to terminate an employee (*Illinois Education Association v. Board of Education* (1975), 62 Ill. 2d 127, 340 N.E.2d 7), so does a fire and police department board possess a legislatively granted right to discharge a worker which it cannot yield. In the case of a home rule unit such as Burbank, it cannot yield without a duly enacted ordinance. See *Prudential Insurance Co. v. City of Chicago* (1977), 66 Ill. 2d 437, 362 N.E.2d 1021; *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 343 N.E.2d 919.

Judgment reversed.

JIGANTI and McGILLICUDDY, JJ., concur.