JOSEPH PARISI, Plaintiff and Third-Party Defendant-Appellant, v. HARRY P. JENKINS, Chief of Police of the Village of Worth, *et al.*, Defendants and Third-Party Plaintiffs-Appellees.

First District (6th Division)   No. 1—91—3292

Opinion filed August 21, 1992.—Rehearing denied November 13, 1992.

44

James J. Roche and Maria G. Calderon, both of James J. Roche & Associates, of Chicago, for appellant.

James E. Gierach and Andrew J. Kutsulis, Jr., both of Gierach, Schussler & Walsh, Ltd., of Oak Lawn, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Joseph Parisi, appeals from an order of the circuit court of Cook County reversing an order of the Board of Police and Fire Commissioners of the Village of Worth (the Police Board) requiring defendants to restore plaintiff to active duty as a patrol officer.

Defendant, the Village of Worth (the Village), appointed plaintiff as a full-time police officer on May 27, 1968, under the supervision of codefendant Chief of Police Harry P. Jenkins. Over the years, plaintiff suffered from various medical problems, including a heart condition and several surgeries. In September 1985, plaintiff injured his knee at work. While undergoing physical therapy for his knee injury, plaintiff injured his back. (Plaintiff has not worked as a police officer since September 1985, and has not been reinstated to active duty to the present.) On September 3, 1986, plaintiff applied to the Village Police Pension Board (the Pension Board) for a line-of-duty disability pension under section 3—114.1 of the Illinois Pension Code. (Ill. Rev. Stat. 1989, ch. 108½, par. 3—114.1.) After a hearing, the Pension Board certified plaintiff to a non-duty disability payment of 50% of his salary as of September 3, 1986. In so doing, the Pension Board concluded that plaintiff injured his back while off duty, and was, therefore, not eligible for a line-of-duty disability under section 3—114.1 of the Pension Code. Plaintiff did not apply to the Police Board for a disability leave or benefits.

On May 20, 1989, plaintiff applied to the Pension Board to terminate his disability pension and to certify him for fitness to return to duty. On June 9, 1989, the Pension Board certified plaintiff's fitness for duty to Jenkins and terminated his disability pension. Plaintiff testified that he did not receive personal notice of the Pension Board's fitness certification. Rather, on June 16, 1989, Jenkins told plaintiff that he received the Pension Board's certification. Jenkins did not tell plaintiff that he must submit a request to the Police Board for reinstatement within 30 days of the Pension Board's certification. On July 11, 1989, plaintiff submitted a letter to the Police Board requesting information on his reinstatement to active duty. The Village refused to reinstate plaintiff as a patrol officer. Plaintiff collected temporary total disability compensation under the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*) at two-thirds his average weekly salary until July 26, 1990. On July 24, 1990, plaintiff entered into a settlement of his worker's compensation claim for the 1985 accident, providing a $65,000 lump sum payment, and monthly payments of $1,200 for five years.

During the period of plaintiff's suspension from duty, the Illinois Fraternal Order of Police Labor Council/Worth Village Lodge No. 143 (FOP) was elected as the bargaining representative for the Village of Worth police department to represent "full time permanent police officers." Shortly thereafter, the Village and the FOP entered into a labor agreement, effective May 1, 1987. Section 2(j) of article XI provides that the employment relationship shall be terminated when an employee "is unable to return to full unrestricted duties within 365 days of a non-work related injury."

On January 25, 1990, plaintiff filed a complaint for injunctive relief in the circuit court against defendants, directing them to reinstate plaintiff to active duty and for payment of lost wages and benefits.

On October 25, 1990, while this case was pending, Jenkins filed charges against plaintiff before the Police Board, alleging that the following matter constituted cause for termination: (1) plaintiff was physically unfit to return to active duty; (2) plaintiff violated the labor agreement; (3) plaintiff violated section 10—2.1—24 of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—24); and (4) plaintiff refused to submit to a medical examination ordered by defendants in violation of a department rule.

During the hearing before the Police Board, plaintiff testified that he felt fine, exercised regularly, and was free from pain. Plaintiff's medical records indicate that he submitted to several medical examinations subsequent to the Pension Board's certification. As ordered by Jenkins, St. Francis Hospital examined plaintiff in July 1989, and found him physically fit to return to work. In August 1989, Dr. David Spencer released plaintiff to work without restrictions effective February 22, 1989. Pursuant to Jenkins' order, Dr. David J. Smith, an orthopedic surgeon, examined plaintiff on December 1, 1990, and found him fit to return to his position as a patrol officer. Dr. John Herbick's letter of December 1990 indicated that "[plaintiff's] cardiac and orthopedic problems should not preclude him from returning as a police officer without restrictions."

The Police Board denied defendants' motion to bar plaintiff under the doctrine of judicial estoppel from offering any evidence of his physical fitness for duty based upon his worker's compensation settlement. The Police Board also barred defendants from cross-examining plaintiff about his physical condition at the time of settlement, his recent complaints of pain, and his medical history. Based upon the evidence adduced at the hearing, the Police Board dismissed counts I and II, and ordered that plaintiff be restored to active duty within

seven days. The Police Board also ordered that plaintiff be censured for his failure to obey Jenkins' order for medical examination.

Upon administrative review, the circuit court of Cook County found that section 2 of Article XI of the labor agreement and section 10—2.1—24 of the Illinois Municipal Code constituted cause for termination. The trial court expressly found the labor agreement valid and binding. The court also determined that the Police Board denied defendants a fair hearing and abused its discretion in denying the Village's motion to bar based upon the judicial estoppel doctrine. The trial court thus reversed the Police Board's decision, and plaintiff appeals from this order.

On appeal, plaintiff argues that: section 10—2.1—24 of the Illinois Municipal Code did not require him to apply for reinstatement to the Police Board; the FOP was not plaintiff's duly elected representative in the bargaining negotiations with defendants; the negotiation of section 2 was an *ultra vires* act by the Village, and in any event, should not be applied to plaintiff because it was negotiated during his disability leave; the judicial estoppel doctrine did not bar testimony of plaintiff's physical fitness to return to active police duty; and defendants were not denied a fair hearing by the Police Board.

Initially, we note that although we are not bound by an administrative decision interpreting statutory language, such conclusion is entitled to great weight. (*Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board* (1987), 154 Ill. App. 3d 1045, 507 N.E.2d 1200.) The standard of review under the Administrative Review Law provides that agency findings on questions of fact are *"prima facie* true and correct." (Ill. Rev. Stat. 1989, ch. 110, par. 3—110.) Neither this court nor the trial court may substitute its judgment for that of the agency. (*Mihalopoulos v. Board of Fire & Police Commissioners* (1978), 60 Ill. App. 3d 590, 376 N.E.2d 1105.) Our courts have construed this provision to limit this court's function to ascertaining whether the administrative agency's findings and decisions are against the manifest weight of the evidence (*Davern v. Civil Service Comm'n* (1970), 47 Ill. 2d 469, 269 N.E.2d 713; *Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 378 N.E.2d 1160), and the opposite conclusion is clearly evident. *McHenry v. City of East St. Louis* (1991), 210 Ill. App. 3d 861, 569 N.E.2d 259.

We first consider plaintiff's contention that section 10—2.1—24 of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—24) did not constitute cause for his termination. In this regard, plaintiff argues that because his leave was authorized by section 3—114.2 of the Pension Code (Ill. Rev. Stat. 1989, ch. 108½, par. 3—114.2),

section 10—2.1—24 of the Municipal Code did not apply here. Defendants respond that plaintiff's failure to request a disability leave from the Police Board did not render section 10—2.1—24 inapplicable.

The Village is subject to the provisions of division 2.1 of article 10 of the Illinois Municipal Code (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—1 *et seq.*), which provides for a board of police commissioners. Section 10—2.1—23 provides as follows:

"§10—2.1—23. Disability or military leave—Grant by board. A person holding a position in a fire or police department *who is injured while in the performance of his duties* and because of such injury is temporarily unable to continue to perform his duties or who enters the military or naval service *** shall, *upon written application to the board,* be granted a disability or military leave, as the case may be." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—23.)

Section 10—2.1—24 of the Code provides in pertinent part as follows:

"§10—2.1—24. Return to active duty. A person who has been on disability or military leave *granted by the board* [of fire and police commissioners] and who wishes to return to active duty in his certified position shall be credited with seniority for the period of such leave and, if otherwise qualified, shall be reinstated to his certified position at the rank or grade held at the start of the leave, not more than 60 days after his written request for reinstatement is filed with the board. Such request shall be filed not more than 30 days after termination of the disability or military or naval service." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—24.

Section 3—114.2 of the Pension Code entitles a police officer to a disability pension of 50% of his salary when it is found that he is physically or mentally disabled so as to render necessary suspension from a cause *other than the performance of a duty.* A disability pension is not paid unless a certificate of disability is filed with the pension board. (Ill. Rev. Stat. 1989, ch. 108½, par. 3—115.) Section 3—116 of the Pension Code provides in relevant part as follows:

"§3—116. Examination and emergency service. A police officer whose duty is suspended because of disability may be summoned to appear before the board, and to submit to an examination to determine fitness for duty. The officer shall abide by the board's decision. If a police officer retired for disability *** is found upon medical examination to have recovered from disability, the board shall certify to the chief of police that the member is no longer disabled and is able to resume the duties

of his or her position." Ill. Rev. Stat. 1989, ch. 108½, par. 3—116.

After the hearing, the Police Board determined that the evidence did not warrant a finding that plaintiff violated section 10—2.1—24. We cannot say that such conclusion was contrary to the manifest weight of the evidence.

■ It is well settled that statutory language must be given its plain, ordinary meaning, and that if the legislative intent can be ascertained from the language of the statute, then the language prevails and will be given effect. (*Laborer's International Union of North America, Local 1280 v. Illinois State Labor Relations Board*, 154 Ill. App. 3d 1045, 507 N.E.2d 1200.) Section 10—2.1—23 of the Municipal Code authorizes the Police Board to grant a disability leave to a police officer who is injured while on duty and who submits a written application to the Police Board for a disability leave. (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—23.) Section 10—2.1—24 outlines the seniority and rank provisions for persons returning to active duty after such disability leave granted by the Police Board. Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—24.

We believe that the plain and ordinary meaning of sections 10—2.1—23 and 10—2.1—24, when read together, indicates that section 10—2.1—24 applies only to a disability leave granted by the Police Board for a duty-related injury. The language of the earlier provision authorizes the Police Board to grant a disability leave to an officer injured "while in the performance of his duties." (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—23.) Section 10—2.1—24 refers to "disability *** leave granted by the board." (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—24.) Under the facts here presented, we cannot say the requirements of section 10—2.1—24 applied to plaintiff.

■ Plaintiff was not injured while on duty. Moreover, he did not apply to the Police Board for disability benefits, nor did the Police Board grant him disability leave. Rather, plaintiff applied to the Pension Board for benefits. After a hearing, the Pension Board specifically found that plaintiff's injury was not duty related and awarded him non-duty-related disability effective September 3, 1986. Because plaintiff did not apply by written application to the Police Board for a disability leave for a work-related injury, as authorized by the Municipal Code, we cannot say that the statutory requirements of section 10—2.1—24 of the Code dictated the procedure for plaintiff's reinstatement. Moreover, our supreme court mandates that we give "substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute." (*Illinois Consolidated Telephone Co. v. Illinois*

*Commerce Comm'n* (1983), 95 Ill. 2d 142, 152, 447 N.E.2d 295, 300.) The Board, after interpreting the statute, concluded that plaintiff did not violate it, and we do not reject such decision.

Even assuming that plaintiff was required under section 10—2.1—24 to apply to the Police Board for reinstatement, we cannot say that the Police Board's factual finding as to the timeliness of plaintiff's request was against the manifest weight of the evidence. Plaintiff testified that he did not learn of the Pension Board's fitness certification until June 16, 1989, and defendants do not deny that plaintiff received no formal notice. On July 11, 1989, plaintiff wrote the Police Board requesting information on his reinstatement, to which inquiry the Police Board never responded. Upon review of the record, we conclude that the Police Board could reasonably have found that plaintiff's letter, dated within 30 days of learning of his fitness certification, constituted a timely request for reinstatement. For the above reasons, we determine that the Police Board's finding that plaintiff did not violate section 10—2.1—24 was consistent with the manifest weight of the evidence. *Davern v. Civil Service Comm'n*, 47 Ill. 2d 469, 269 N.E.2d 713.

We next consider plaintiff's argument that the labor agreement did not constitute cause for termination. In this regard, plaintiff maintains that the negotiation and adoption of section 2 of the labor agreement was an *ultra vires* act by the Village.

Section 2(j) of the labor agreement provides that the employment relationship shall be terminated when an employee "is unable to return to full unrestricted duties within 365 days of a non-work related injury." After hearing, the Police Board determined that the Village lacked authority to include such provision in the labor agreement because such power was reserved exclusively for the Police Board. The trial court reversed, finding that the labor agreement superseded the Police Board's authority to reinstate plaintiff.

■ Illinois statutory law provides that a member of a police department may be removed or discharged only for cause, upon written charges and after an opportunity to be heard at a fair and impartial hearing, conducted by the Board of Fire and Police Commissioners. (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—17; *Wilson v. Board of Fire & Police Commissioners* (1990), 205 Ill. App. 3d 984, 563 N.E.2d 941.) The Board, therefore, has the sole authority to discharge or suspend without pay. (*Wilson v. Board of Fire & Police Commissioners*, 205 Ill. App. 3d 984, 563 N.E.2d 941.) Our courts have defined such "cause" for dismissal as follows:

"[S]ome substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place." (*Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360, 189 N.E.2d 275, 277.)

(See also *Griggs v. North Maine Fire Protection Board of Fire Commissioners* (1991), 216 Ill. App. 3d 380, 387, 576 N.E.2d 1082, 1088; *Kvidera v. Board of Fire & Police Commissioners* (1989), 192 Ill. App. 3d 950, 963, 549 N.E.2d 747, 755.) A police board is afforded considerable latitude and discretion in determining what constitutes cause for discipline or discharge (*Griggs v. North Maine Fire Protection Board*, 216 Ill. App. 3d 380, 576 N.E.2d 1082; *Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 335 N.E.2d 126), and the Commission's decision must be given substantial deference. *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.

Plaintiff cites *Weisenritter v. Board of Fire & Police Commissioners* (1978), 67 Ill. App. 3d 799, 385 N.E.2d 336, in support of his claim that the adoption of the employment termination provision in the labor agreement constituted an *ultra vires* act by the Village. We agree with plaintiff and find *Weisenritter* dispositive of this issue.

In *Weisenritter*, plaintiff-fireman challenged the Board's jurisdiction to conduct a hearing on charges against him requesting his termination. Plaintiff argued that the grievance procedures under a collective bargaining agreement entered between the city and the fire department removed the Board's power to conduct a hearing on such charges. This court rejected plaintiff's argument, finding that section 10—2.1—17 of the Act sets forth the procedure for discharge and expressly granted the Board the right to discharge employees, writing as follows:

"This statutory directive imposes an integral duty and function upon the Board which cannot be delegated or abrogated by a collective bargaining agreement. Just as a school board has a nondelegable discretionary power to terminate an employee [citation], so does a fire and police department board possess a legislatively granted right to discharge a worker which it cannot yield." (*Weisenritter*, 67 Ill. App. 3d at 805, 385 N.E.2d at 340.)

Under *Weisenritter*, the Board's "integral duty and function" to discharge employees cannot be abrogated. See also *Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129, 302 N.E.2d 313; *Stearns v. Board of Fire & Police Commissioners* (1978), 59 Ill. App. 3d 569, 375 N.E.2d 877; *People ex rel. Carey v. Forberg* (1975), 33 Ill. App. 3d 161, 337 N.E.2d 369.

■ We hold that the Police Board's statutory power to determine cause for dismissal and terminate an employee cannot be abrogated by a collective bargaining agreement. The labor agreement's presumption that an officer's 365-day disability leave necessarily constitutes "good cause" for termination entirely precludes the Board's determination of this issue. We do not believe that a year-long, injury-related absence from the police department inevitably embodies "a substantial shortcoming" which renders the officer's employment detrimental to the police department.

Moreover, the labor agreement provision authorizing the police chief to terminate an officer's employment on the basis of this single factor without granting "an opportunity to be heard in his own defense," as the statute requires, is clearly inconsistent with section 10—2.1—17. The Board's statutory authority to determine cause for dismissal supersedes the termination provision in section 2. As such, the Board's finding was not contrary to the manifest weight of the evidence.

■ We reject defendants' claim that the termination provision was a proper subject of bargaining under the Illinois Public Labor Relations Act (Labor Act) (Ill. Rev. Stat. 1989, ch. 48, par. 1601 *et seq.*). Section 7 of the Labor Act provides that a public employer must bargain over any matter "with respect to wages, hours and other conditions of employment, not specifically provided for in any other law or not specifically in violation of the provisions of any law." (Ill. Rev. Stat. 1989, ch. 48, par. 1607.) This section further provides in relevant part:

> "If any other law pertains, in part, to a matter affecting the wages, hours and *other conditions of employment*, such other law shall not be construed as limiting the duty 'to bargain collectively' and to enter into collective bargaining agreements containing *clauses which either supplement, implement, or relate to the effect of such provisions in other laws.*" (Emphasis added.) Ill. Rev. Stat. 1989, ch. 48, par. 1607.

We also reject defendants' characterization of the provision as a "365 day condition of employment." In our view, a provision which summarily defines cause for discharge is not a "condition of em-

ployment" under the meaning of the statute. *Cf. Forest Preserve District v. Illinois Local Labor Relations Board* (1989), 190 Ill. App. 3d 283, 546 N.E.2d 675 (requirement that officers pass an examination to keep jobs was a condition of employment); *Central States, Southeast & Southwest Areas Pension Fund v. Chicago-St. Louis Transport Co.* (N.D. Ill. 1982), 535 F. Supp. 476 (pension plans and other fringe benefits were conditions of employment); *Schick v. National Labor Relations Board* (7th Cir. 1969), 409 F.2d 395 (seniority provisions were conditions of employment).

Even assuming that the termination provision was a "condition of employment," we cannot construe the provision as pertaining to a matter not specifically provided for or in violation of another law, and as merely "supplementing, implementing, or relating to" the Municipal Code. As indicated above, section 10—2.1—17 grants the Police Board authority to determine cause for an employee's termination. This statute must be given its plain meaning. (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 498 N.E.2d 1102.) The labor agreement's provision, by defining cause for termination, constitutes a matter specifically provided for in, and directly in conflict with, section 10—2.1—17. We believe that such conflict between the labor agreement and the Police Board's statutory authority to determine good cause for termination exempted the bargaining unit from the duty to bargain imposed by section 7 of the Labor Relations Act. (See *County of Cook v. Illinois Local Labor Relations Board* (1990), 204 Ill. App. 3d 370, 561 N.E.2d 1089.) As such, the Labor Act does not support defendants' claim that the labor agreement provision superseded the statute.

Thus we reject the trial court's conclusion that the Police Board abused its discretion in finding that the provision did not constitute cause for termination because the Village lacked power to negotiate and adopt this provision.

We next consider whether the Board erred in denying defendants' motion to bar evidence of plaintiff's alleged fitness for duty based upon the judicial estoppel doctrine.

The judicial estoppel doctrine provides that a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding. (*Department of Transportation v. Coe* (1983), 112 Ill. App. 3d 506, 445 N.E.2d 509.) In order to apply the judicial estoppel doctrine, five requirements must be met: (1) the two positions must be taken by the same party; (2) the positions must be taken in judicial proceedings; (3) the positions must be given under oath; (4) the party must

have successfully maintained the first position, and received some benefit thereby; and (5) the two positions must be "totally inconsistent." (*Coe*, 112 Ill. App. 3d at 509-10, 445 N.E.2d at 508.) At issue here is the fifth requirement, the inconsistency of the positions.

This court considered somewhat analogous facts in *Department of Transportation v. Grawe* (1983), 113 Ill. App. 3d 336, 447 N.E.2d 467, and *Department of Transportation v. Coe*. In *Coe*, plaintiff entered into a lump sum settlement of a worker's compensation claim after his physician stated in a letter to the employer that plaintiff was entitled to 20% "*permanent* partial disability to the body as a whole." (Emphasis added.) (*Coe*, 112 Ill. App. 3d at 508, 445 N.E.2d at 507.) The settlement agreement provided in effect that the settlement represented 20% *permanent* disability. This court held that plaintiff was judicially estopped from later asserting that he was able to perform his former duties. In *Grawe*, this court held that the judicial estoppel doctrine did not apply where the worker's compensation agreement did not refer to the extent of physical disability and the record contained no statements by employee that he was permanently disabled or unable to perform his work. In so deciding, this court recognized that the Industrial Commission based its award upon the fact that plaintiff was "wholly and permanently incapable of work." The court found, however, that such statement was inconsequential because the settlement agreement which superseded the Commission's decision did not contain such a statement, and the statement did not amount to a "position" assumed by plaintiff. The court concluded as follows:

> "Since [plaintiff] did not at any time in the course of the workers' compensation proceeding assert that he was permanently disabled, his position in the second [proceeding] *** is not inconsistent with any position which he assumed in the workers' compensation proceeding." *Grawe*, 113 Ill. App. 3d at 343, 447 N.E.2d at 471.

Under *Grawe* and *Coe*, we find that the judicial estoppel doctrine did not bar evidence of plaintiff's alleged fitness to return to work. Unlike the settlement agreement in *Coe*, the agreement in this case did not refer to any permanent disability. Rather, the settlement contract indicated "*temporary* total disability" and the attached rider referred to "liability for *temporary* total compensation." Moreover, as in *Grawe*, nothing in the record reflects that plaintiff represented in conjunction with his worker's compensation claim and settlement that he was permanently disabled or totally incapacitated from performing his occupational duties. Nor do we be-

lieve, in light of the above authority, that plaintiff's acceptance of temporary total disability payments through July 1990 evoked the judicial estoppel doctrine. We conclude that plaintiff's reinstatement request and claim of fitness were not inconsistent with his worker's compensation claim. We cannot say, therefore, that the Police Board's denial of defendants' motion was improper.

■ Finally, we reject the trial court's finding that the Board denied defendants a fair hearing. Defendants maintain that the Board erred when it precluded evidence related to plaintiff's worker's compensation claim and evidence of plaintiff's physical condition prior to December 1990.

Illinois law provides that technical errors in administrative proceedings "shall not constitute grounds for the reversal of the administrative decision unless it appears to the court that such error or failure materially affected the rights of any party and resulted in substantial injustice." (Ill. Rev. Stat. 1989, ch. 110, par. 3—111(9)(b).) Our review of the record satisfies us that the Police Board fairly conducted the hearing. Moreover, in our view, the record reveals that the Police Board's evidentiary rulings did not result in substantial injustice to defendants. (See *Lloyd A. Fry Roofing Co. v. Pollution Control Board* (1974), 20 Ill. App. 3d 301, 314 N.E.2d 350.) Rather, the Police Board's decision rests upon substantial competent evidence, and as such, does not constitute an abuse of discretion.

For the foregoing reasons, we hold that the trial court erred in setting aside the order of the Police Board. Accordingly, the judgment of the circuit court of Cook County is reversed, and the order of the Board of Fire and Police Commissioners is reinstated.

Judgment reversed.

EGAN, P.J., and RAKOWSKI,* J., concur.

---

*Justice Rosemary LaPorta participated in oral argument prior to her death. Justice Thomas R. Rakowski was substituted on the panel and has listened to the oral argument tape and has read the briefs.