THIRD DIVISION
 NOVEMBER 27, 1996










No. 1--95--3156

ANIL K. BIDANI, M.D.,

 Plaintiff-Appellant,

 v.

EDMUND J. LEWIS, M.D., Individually,
EDMUND J. LEWIS & ASSOCIATES, S.C.,
RENAL CONSULTANTS, LIMITED, AMERICAN
MEDICAL SUPPLY CORPORATION and CIRCLE
MEDICAL MANAGEMENT, INC.,

 Defendants-Appellees.)
)
)
)
)
)
)
)
)
)
)
)
)Appeal from the
Circuit Court of
Cook County

No. 91--L--11514

Honorable
Arthur Sullivan,
Judge Presiding.


 JUSTICE CERDA delivered the opinion of the court:
 On July 22, 1991, plaintiff, Dr. Anil K. Bidani (Dr.
Bidani), filed a complaint for breach of contract and
constructive trust against defendants, Dr. Edmund J. Lewis (Dr.
Lewis), Edmund J. Lewis and Associates, S.C. (Lewis and
Associates), Renal Consultants, Limited (Renal), American Medical
Supply Corporation (AMS), and Circle Medical Management, Inc.
(Circle). Dr. Bidani claimed ownership and profit interests in
Renal, AMS, and Circle as a result of alleged oral agreements he
made with Dr. Lewis. Because Dr. Bidani had disavowed any
interest in those companies in his previous divorce action, the
trial court applied the doctrine of judicial estoppel and entered
summary judgment in favor of defendants.
 On appeal, Dr. Bidani asserts that (1) the doctrine of
judicial estoppel was improperly invoked; and (2) the trial court
erred in denying him leave to file a second amended complaint. 
We affirm.
 The issue in this case is whether judicial estoppel should
be applied where the same party testified that he held no
interest in businesses in a prior lawsuit and now claims in this
suit that he does have an interest in the same businesses.
 In his first amended complaint, Dr. Bidani alleged as
follows. He had been employed by Lewis and Associates to perform
medical duties as a nephrologist at Rush-Presbyterian-St. Luke's
Medical Center (Rush) from October 1979 through August 1990. In
1981, Dr. Bidani, Dr. Lewis, and two other Rush nephrologists
made an oral agreement to propose to Rush that its dialysis
services be transferred to an off-site private facility (the
dialysis enterprise), which would be owned and operated by the
four doctors. The dialysis enterprise would consist of two
components: (1) free standing dialysis machines (dialysis machine
unit) and (2) medical supplies for home dialysis patients
(medical supply unit). To amass the necessary funds for the
dialysis enterprise, the four doctors agreed to provide
professional services at the Chicago Kidney Center, a private
medical center that was independent from Rush. The professional
fees earned at the Chicago Kidney Center would be held by
Dialysis Services, Ltd. (Dialysis Services) until enough money
was accumulated to establish the dialysis enterprise. The fees
went to Dialysis Systems from 1979 through 1981, then to Renal
Consultants, Limited. Dr. Bidani received over $100,000 from
Renal through 1988.
 When implementation of the dialysis enterprise was deferred
indefinitely in 1983, Dialysis Services was liquidated and Dr.
Bidani received $37,674 as his share of the distribution. The
other two doctors ended their relationship with Dr. Lewis, but
Dr. Bidani and Dr. Lewis orally agreed to continue their 1981
agreement. 
 The dialysis enterprise's medical supply unit was activated
in 1983 through AMS (American Medical Supply Corp.), which bought
medical supplies directly from medical suppliers and distributed
them to the dialysis enterprise's home dialysis patients. Dr.
Bidani received $72,120 from AMS from 1983 through 1986. In
1988, Rush transferred its 10 freestanding dialysis units to
Circle, which allegedly received $150,000 from the dialysis
enterprise's medical supply unit. In August 1989, Dr. Bidani
discovered that the profits of Renal, AMS, and Circle had
exceeded $6 million from 1982 through 1990. 
 Based on those allegations, Dr. Bidani claimed that he was
entitled to an equal ownership interest in Circle and an equal
profit share of Renal, AMS, and Circle. He alleged that Dr.
Lewis breached his oral contract with Dr. Bidani and illegally
converted the assets he held in constructive trust for Dr.
Bidani.
 Defendants filed a motion for summary judgment on the basis
that Dr. Bidani was judicially estopped from proceeding with this
action because his position was inconsistent with his sworn
testimony in his 1986 dissolution of marriage action against his
ex-wife, Dr. Nalini Bidani.
 In 1986, Dr. Anil Bidani filed a dissolution of marriage
action against his wife. In his sworn interrogatory answers, he
claimed that the only interest he held in any closely held
corporation, partnership, joint venture, or sole proprietorship
was in an unrelated real estate partnership. In his deposition,
he testified that he received performance bonuses from Renal and
AMS from 1983 through 1986, was a Renal employee, received W-2
forms to support his payments from Renal, had no contract with
either Renal or AMS, had never been a shareholder of any medical
corporation, and his salary was not affected by the receipts of
Lewis and Associates, Renal, or AMS. When asked to explain his
prior interest in Dialysis Services, Dr. Bidani stated that he
joined that group when he was making rounds at the Chicago Kidney
Center, but received his shares and subsequent distribution only
when Dialysis Services was liquidated. Later at the court
hearing, Dr. Bidani disavowed any present or future interest in
Renal, AMS, Circle, or any future medical practice or medical
supply corporation. In addition, he testified that no one was
holding any property of value as a trustee or nominee for him. 
 Dr. Lewis testified in a deposition in Dr. Bidani's divorce
action that Dr. Bidani had no interest in Renal or AMS, but was
periodically reimbursed by both companies for his consultant
services at the Chicago Kidney Center, which averaged two hours a
week. Dr. Lewis had discretion in the amount he gave Dr. Bidani
for his services. There was no regular reimbursement, no fixed
amount of reimbursement, and no agreement between Drs. Lewis and
Bidani concerning the reimbursement. Dr. Lewis stated that Dr.
Bidani had no contract or stock options with any of Dr. Lewis's
corporations.
 In addition, Dr. Lewis explained that Dialysis Services
accumulated funds to build a dialysis unit outside of Rush. 
After it became clear in 1983 that the project would not go
forward, Dialysis Services was liquidated and Dr. Bidani received
his share of the distributions.
 After considering all the testimony and evidence, the trial
court approved the agreed order between Dr. Bidani and his wife
and entered a judgment of dissolution of the marriage. Neither
Renal, AMS, nor Circle were mentioned in the order. 
 In this case, the trial court entered summary judgment for
defendants based on the doctrine of judicial estoppel. The order
stated:
 "The court has made no determination that the
 allegations of the plaintiff are, in fact, untrue, but
 only that the plaintiff is estopped from asserting
 inconsistent positions in separate judicial
 proceedings."
 The trial court found that several statements made in Dr.
Bidani's interrogatories, deposition, and court testimony in his
divorce proceeding were inconsistent with his statements in this
action. Based on his prior testimony, Dr. Bidani successfully
obtained "a judgment of dissolution of marriage on September 8,
1988, which clearly contemplated that [he] had no interest in the
defendant entities." The trial court found Dr. Bidani's
intention to include his ex-wife in any recovery in this case as
immaterial to the issue of judicial estoppel and could be
construed as a tacit admission that his position in this case is
directly contrary to his testimonial position in the divorce
action.
 The trial court rejected Dr. Bidani's argument that he did
not know the extent of his interest in AMS and Circle at the time
of his divorce. The court stated that the argument "beg[ged] the
question, as the claim of interest in these entities allegedly
derives from agreements made in 1981-1983, well before the
divorce proceedings, and these interests were not disclosed in
the divorce proceedings." 
 The court explained that judicial estoppel is "a rule which
estops a party from playing 'fast and loose' with the court. It
means that a party is not permitted to maintain inconsistent
positions in separate judicial proceedings. The doctrine of
judicial estoppel rests upon public policy which upholds the
sanctity of the oath and its purpose is to bar as evidence
statements and declarations which would be contrary to sworn
testimony the party has given in the same or previous judicial
proceedings." 
 Judicial estoppel provides that a party who assumes a
particular position in a legal proceeding is estopped from
assuming a contrary position in a subsequent legal proceeding. 
Parisi v. Jenkins, 236 Ill. App. 3d 42, 53, 603 N.E.2d 566
(1992); Department of Transportation v. Grawe, 113 Ill. App. 3d
336, 341, 447 N.E.2d 467 (1983). It is designed to promote the
truth and to protect the integrity of the court system by
preventing litigants from deliberately shifting positions to suit
the exigencies of the moment. Ceres Terminals, Inc. v. Chicago
City Bank and Trust Co., 259 Ill. App. 3d 836, 857, 635 N.E.2d
485 (1994); Cashmore v. Builders Square, Inc., 211 Ill. App. 3d
13, 18, 569 N.E.2d 1353 (1991). Having affirmed under oath that
certain facts exist, a party cannot be allowed to later affirm
that the contrary is true. Ceres Terminals, Inc., 259 Ill. App.
3d at 854; Finley v. Kesling, 105 Ill. App. 3d 1, 9, 433 N.E.2d
1112 (1982). 
 Although judicial estoppel is flexible and not reducible to
a formula, the following five elements are generally necessary:
(1) the two positions must be taken by the same party; (2) the
positions must be taken in judicial proceedings; (3) the
positions must be given under oath; (4) the party must have
successfully maintained the first position and received some
benefit; and (5) the two positions must be totally inconsistent. 
Ceres Terminals, Inc., 259 Ill. App. 3d at 851; Trombello v.
United Airlines (In re Air Crash Disaster at Sioux City), 259
Ill. App. 3d 231, 238-39, 631 N.E.2d 1302 (1994); Parisi, 236
Ill. App. 3d at 53-54; Grawe, 113 Ill. App. 3d at 341-42. 
 Because judicial estoppel precludes a contradictory position
without examining the truth of either statement, it necessarily
eliminates the trial court's role as fact finder. Ceres
Terminals, Inc., 259 Ill. App. 3d at 856-57. For that reason, it
should be cautiously applied to avoid infringing on the court's
truth-seeking function and only when not to do so would result in
an injustice. Ceres Terminals, Inc., 259 Ill. App. 3d at 856-57. 
The application of the doctrine of judicial estoppel will not be
reversed unless it was an abuse of the trial court's discretion. 
Ceres Terminals, Inc., 259 Ill. App. 3d at 856.
 Dr. Bidani's main assertion on appeal is that applying the
doctrine of judicial estoppel will perpetuate Dr. Lewis's
fraudulent conduct. His arguments confuse judicial estoppel,
which protects the integrity of the courts rather than the
litigants, with the distinct doctrine of equitable estoppel,
which focuses on the relationship between the litigants. Ceres
Terminals, Inc., 259 Ill. App. 3d at 850 n. 2; Trombello, 259
Ill. App. 3d at 238. Equitable estoppel refers to reliance by
one party on the word or conduct of another so that the party
changes his or her position and subsequently suffers harm. 
Gary-Wheaton Bank v. Meyer, 130 Ill. App. 3d 87, 95-96, 473
N.E.2d 548 (1984); Wilson v. Illinois Benedectine College, 112
Ill. App. 3d 932, 939, 445 N.E.2d 901 (1983). In contrast,
judicial estoppel considers the inconsistent statements made by
the same party in different judicial proceedings. Parisi, 236
Ill. App. 3d at 53-54. While the objective of equitable estoppel
is to ensure fairness in the relationship between the parties,
judicial estoppel focuses on the relationship between the
litigant and the judicial system. See Comment, Precluding
Inconsistent Statements: The Doctrine of Judicial Estoppel, 80
Northwestern University L. Rev. 1244, 1248-49 (1986).
 To support his contention that Dr. Lewis's conduct must be
scrutinized when considering whether to invoke judicial estoppel,
Dr. Bidani cites Gary-Wheaton Bank, 130 Ill. App. 3d at 95-96,
Wilson, 112 Ill. App. 3d at 939, and Forest Investment Corp. v.
Chaplin, 55 Ill. App. 2d 429, 434, 205 N.E.2d 51 (1965), which
are equitable estoppel cases, and Excellent Builders, Inc. v.
Pioneer Trust and Sav. Bank, 15 Ill. App. 3d 832, 836-37, 305
N.E.2d 273 (1973), which involves the doctrine of the balancing
of degrees of culpability. 
 He relies on Riddlesbarger v. Riddlesbarger, 324 Ill. App.
176, 57 N.E.2d 901 (1944), an equitable estoppel case that he
mischaracterizes as a judicial estoppel case. Mrs. Riddlesbarger
sought a divorce several years after her husband obtained an
allegedly void divorce decree against her. Riddlesbarger, 324
Ill. App. at 177. Although the trial court found that Mr.
Riddlesbarger had obtained the earlier divorce decree through
fraudulent conduct against his wife and the city court, it held
that his wife was estopped in pais from asserting any rights she
may have had because she did not challenge the divorce decree
earlier. Riddlesbarger, 324 Ill. App. at 181-83. On appeal, the
divorce decree was declared void on the basis that the city court
lacked jurisdiction since the alleged desertion did not occur
within the city's territorial limits. Riddlesbarger, 324 Ill.
App. at 184. In dicta, the reviewing court stated that Mrs.
Riddlesbarger's actions would not have constituted estoppel in
pais even if the decree had not been void because she thought the
earlier divorce was valid until her attorney told her
differently. Riddlesbarger, 324 Ill. App. at 189-90.
 In response, Dr. Lewis compares this case with Finley v.
Kesling, 105 Ill. App. 3d 1, and Kale v. Obuchowski, 985 F.2d 360
(7th Cir. 1993), which are factually similar to this case. In
Finley, 105 Ill. App. 3d at 2, the appellate court affirmed the
dismissal of an action in which the owner of the Oakland A's
baseball team claimed beneficial ownership of 40% of the team's
stock. Because he had testified in his prior divorce action that
the 40% of the stock that was at issue was owned by his children
and not by him, the subsequent action was dismissed because of
judicial estoppel. Finley, 105 Ill. App. 3d at 2-4. He was
estopped from raising the issue in the later action because he
deliberately perpetrated a fraud on the court by concealing it
earlier. Finley, 105 Ill. App. 3d at 10.
 In Kale, 985 F.2d 360, the Federal court applied Illinois
law. When a partner in an industrial park declared bankruptcy,
the plaintiff asserted a claim that he also was a partner in the
industrial park. Kale, 985 F.2d at 361. He asked the bankruptcy
court to recognize that interest, free of any claims by the
creditors, but the bankruptcy trustee opposed the request on the
basis that the plaintiff had testified differently in his
previous divorce proceeding. Kale, 985 F.2d at 361. The
plaintiff had earlier testified that he was not investing in the
industrial park in any way and had no interest in any real
property other than the marital home. Kale, 985 F.2d at 361. 
The trial court dissolved the marriage and approved a property
settlement requiring the plaintiff to pay $175,000 to his former
wife in lieu of all other financial obligations. Kale, 985 F.2d
at 361. Based on the plaintiff's position in his divorce
proceeding, the bankruptcy judge invoked judicial estoppel to
dismiss his partnership claim in the industrial park. Kale, 985
F.2d at 361. 
 Dr. Bidani argues that Dr. Lewis did not prove that Dr.
Bidani prevailed in the divorce proceeding based on his previous
position, which is an element of judicial estoppel. Dr. Bidani
mistakenly claims that he had to lose his divorce action and his
ex-wife had to win before judicial estoppel can be applied. That
is overstating the requirement.
 The rule has been alternately stated as (1) the prior
inconsistent position must have been accepted by the court (Ceres
Terminals, Inc., 259 Ill. App. 3d at 855); and (2) the party must
have successfully maintained the first position and received some
benefit from it (Parisi, 236 Ill. App. 3d at 53-54; Cashmore, 211
Ill. App. 3d at 18; Grawe, 113 Ill. App. 3d at 341-42).
 Dr. Bidani argues that he did not receive any benefit from
his position in the divorce proceeding because the divorce decree
was no different as a result of that position. Dr. Bidani
indicates that the divorce decree did not divide any of his
income and that he fully disclosed all his income from AMS,
Renal, and Circle to his ex-wife prior to the settlement
agreement. 
 Dr. Bidani's argument is similar to the argument rejected in
Kale, where the plaintiff argued that he had not prevailed on his
previous position in the divorce proceeding because the divorce
court approved the property settlement without deciding any issue
in his favor. Kale, 985 F.2d at 361. The federal court rejected
that argument, stating:
 "Hoodwinking a [] court so completely that decision
 becomes unnecessary is not a satisfactory reason to
 authorize a contrary claim in another court. No case
 appellants have cited to us, and none we could find,
 makes application of judicial estoppel depend on the
 existence of a judicial opinion adopting the litigant's
 position; it is enough that the litigant win. 
 Sometimes a settlement sidesteps the issue in the first
 case, so that neither side prevails on a particular
 contested issue. [citation] Frequently, however, a
 settlement represents capitulation. Persons who
 triumph by inducing their opponents to surrender have
 'prevailed' as surely as persons who induce the judge
 to grant summary judgment. [citation] Having won a
 favorable allocation of property in the divorce case by
 insisting that he had no interest in real property
 other than the marital home, [the plaintiff] is stuck
 with that proposition in subsequent litigation." Kale,
 985 F.2d at 362.
 Similarly, Dr. Bidani successfully advanced his position
regarding his business interests in his divorce case despite
there being no judicial decision on that issue. As a result of
his position, that he had no interest in Renal, AMS, or Circle,
the trial court approved the settlement agreement and entered
final judgment without including Dr. Bidani's alleged interests
in those companies.
 Dr. Bidani's next assertion is that his statements were not
totally inconsistent because his position after discovery was
that he had a profit interest, not the ownership interest that
was alleged in his unverified first amended complaint. He
contends that in his divorce action, he was asked only whether he
had an ownership interest in defendant corporations, not whether
he had any profit interest. Dr. Bidani admits that his testimony
in the divorce action was not totally forthcoming, but claims
that it was truthful because his interest in the corporations
could not be transferred to his ex-wife or divided with her. He
maintains that there was no reason to disclose to his ex-wife his
right to share in the profits until he learned that AMS and
Circle were making large profits, which he then offered to share
with his ex-wife. He also claims that he was confused about the
nature of his interest in the corporations, especially because
many of the questions called for legal conclusions. 
 Dr. Bidani's argument has no merit. In his divorce action,
he testified under oath that he had no present or future interest
whatsoever in Renal, AMS, Circle, or any other medical practice
or medical supply company. In this action, he contends that he
has a profit interest in Renal, AMS, and Circle. Those positions
are totally inconsistent and cannot be reconciled. 
 Furthermore, it is irrelevant that Dr. Bidani has now
offered that his ex-wife will share in 50% of any recovery in
this case. He stresses that judicial estoppel should not be
applied because it would penalize his ex-wife, who was the
purported victim in the divorce action. We agree with the trial
court that his intention to include his ex-wife in any recovery
in this case is immaterial to the issue of judicial estoppel and
could be construed as a tacit admission that his position in this
case is directly contrary to his testimonial position in the
divorce action.
 We conclude that summary judgment was properly granted on
the basis of judicial estoppel because Dr. Bidani's sworn
testimony in his previous divorce action was totally inconsistent
with his position in this case. Although applying judicial
estoppel sometimes leads to harsh results, it is often necessary
to protect the sanctity of the oath and to preserve the integrity
of the courts and the judicial process. Comment, Precluding
Inconsistent Statements: The Doctrine of Judicial Estoppel, 80
Northwestern University L. Rev., at 1245.
 LEAVE TO FILE SECOND AMENDED COMPLAINT
 Finally, Dr. Bidani asserts that he should be granted leave
to file a second amended complaint because he is now asserting a
profit interest in AMS and Circle instead of the ownership
interest he asserted in his first amended complaint. We
disagree.
 Although courts are encouraged to freely and liberally allow
the amendment of pleadings, a party's right to amend is not
absolute and unlimited. Lee v. Chicago Transit Authority, 152
Ill. 2d 432, 467, 605 N.E.2d 493 (1992). Among the factors to
consider in determining whether or not to permit an amendment to
the pleadings are whether the amendment would cure a defect in
the pleadings; whether the other party would be prejudiced or
surprised by the proposed amendment; the timeliness of the
proposed amendment; and whether there were previous opportunities
to amend the pleadings. Lee, 152 Ill. 2d at 467-68. Absent an
abuse of discretion, the trial court's decision regarding
amendments of pleadings will not be disturbed on review. Lee,
152 Ill. 2d at 467.
 Because the second amended complaint would not have cured
the defect in the first amended complaint, the trial court did
not abuse its discretion in denying Dr. Bidani leave to file a
second amended complaint. Contrary to Dr. Bidani's contention
that he has changed his position, the first amended complaint
asserts both a profit interest in Renal, AMS, and Circle, and an
ownership interest in Circle. Therefore, judicial estoppel would
still apply if he were allowed to assert an interest only in the
profits of AMS, Renal, and Circle. In addition, naming Dr. Lewis
as the only defendant would make no difference in the summary
judgment motion. Accordingly, we conclude that the trial court
did not abuse its discretion when it denied Dr. Bidani leave to
file a second amended complaint.
 Based on the foregoing, the circuit court judgment is
affirmed.
 Affirmed.
 Tully, P.J., and Gallagher, J., concur.